WILLIAM JACKSON V. ELAM STOCKBRIDGE.

Where a party had given his note for stock in a railroad, upon the representations of an agent for the road that the road would be completed to a certain point by a named day, but it was apparent that such representations were but the opinions of the agents, it is no defense to the note that the road was not completed by the day named.

The representations must not only be something material, but something in regard to which the one party places a known trust and confidence in the other. It must not be a mere matter of opinion, equally open to both parties for examination and inquiry, where neither is presumed to trust to the other, but to rely on his own judgment. (Story's Eq., §§ 191, 199.)

The misrepresentation must be known by the party who makes it to be false; that it must actually mislead the other party.

Where the note contained a condition that the road must be completed to a given point within a given time, the condition must be substantially complied with; and where the issue as to whether the road was completed or not was fairly put to the jury, and they found that it was, and there was evidence to sustain the verdict, it will not be disturbed, although it was proved that the road was not in complete running order for passengers and freight.

APPEAL from Harris. The case was tried before Hon. EDWARD A. PALMER, one of the district judges.

The facts of the case are given with great particularity in the opinion of the court. The judgment was against the defendant, from which he appealed.

No brief for the appellant has been furnished to the *Reporter*.

*Henderson & Johnstone*, for appellee, cited Perry v. Robertson's Administratrix, 2 Tex., 490; Legg v. McNeil *et al.*, 2 Tex., 428; Dugan v. Cole, 2 Tex., 385.

DONLEY, J.—The note upon which this action is founded was to be paid upon condition that the Galveston and Red River Railway Company completed the railroad to the river Navasoto by the 16th of October, 1859. Plaintiff averred

that the road was completed to the Navasoto river before the time specified.

Defendant avers that he was induced to execute said note by fraudulent representations of the agent of the company, to the effect that the Galveston and Red River Railway Company had surveyed and located the line of their road to the Brasos river, and that the road would run up the Brasos valley; that said representations were false, and made with the design to induce the defendant to sign said note, and that the plaintiff obtained the note after it was due, with a full knowledge of the fraud by which it was procured. It is further alleged, that to induce him to sign said note, the payee thereof represented that said railroad would be completed to a point on the Brasos river by the fall or winter of 1857; that said representations have proved to be false, and were made for the purpose to induce him to sign said note, and that he did so sign it in consequence of said representations.

It is averred that said note was given upon conditions which have not been performed.

Theodore Kayser, a witness for plaintiff, testified that he was the chief engineer upon the road; that it was laid in a good substantial manner to within a few rods of the Navasoto river, in July, 1859, but was not open to general railroad purposes until January, 1860; that it was used for construction purposes before that time, but that the excavations were not finished, and the embankments were not made according to profile; that the bridges were temporary and grades imperfect. That it was possible to use the road by having a large number of extra hands on it to keep it up. That a large amount of work was done subsequently to September, 1859; that the road was not completed, strictly speaking, by the 16th of September, 1859; that he had never seen a complete road—there was always something to be done; that the road was in such a state of completion as to have enabled the cars to have run reg-

ularly by keeping a corps of repair hands, and that such is usual upon all roads. That he saw freight and passenger-cars pass over the road in July, 1859, on several occasions; that the iron was laid to a point on the bank of the Navasoto river, at which the bridge would begin.

W. J. Kyle, for plaintiff, testified that he was engaged on the road from February, 1859, to the completion of the road, in July, 1859. That construction-cars were used on the road, carrying as many tons as the engineer would allow to go on the cars. That the road was laid down in a rough condition, as he was informed by the engineer, but he considered the road substantial to run construction-trains to within a few hundred yards of the river, but might have gone nearer the river if necessary. That no forfeiture attached in consequence of the company failing to complete the road. That the grades in some places were imperfect, the culverts temporary, but substantial for construction-trains.

F. A. Rice, a witness for plaintiff, testified that, in July, 1859, he passed over the road from Hempstead to within a short distance of the Navasoto river on a passenger-car; that the State engineer was along to examine the road and report upon its condition; that witness did not examine the work; that the cars made good speed on part, and went slowly on part of the road, and were compelled to stop occasionally, for reasons witness could not explain, as he was in the inside of the cars, and did not go out to examine; was informed that the State engineer made such report as to enable the company to draw the land bonus, and that witness drew the loan from the State; did not know of the third section being used between August, 1859, and January, 1860, for any other than construction purposes.

H. H. Allen, for plaintiff, testified that he was the agent of the railroad company during the year 1835; that he was employed by the company to solicit subscriptions to said

road; that he had full authority from the company to hold out inducements to subscribers by representations, &c.; that on the day of making the note sued on he conversed with the defendant, persuaded him to give the note, represented to the defendant that the stock would be a good investment, for that the road would only cost from $15,000 to $18,000 per mile, and would be completed to the Brazos [Navasoto] river by the fall of 1858, so that the defendant could convey his crop of that year by the road to market; that he had a good deal of conversation with the defendant, and while he was only expressing his opinion, yet those opinions had proved to be incorrect; did not inform defendant that they were only his opinions; that the road had cost upwards of $25,000 a mile, and was not finished by the time he supposed it would be, but that his opinion had been more than realized by the enhanced value of the lands along the line of the road.

Hill, a witness for the defendant, testified that he had been engaged in railroad building twenty years; that he had traveled over the third section of the Galveston and Red River railroad in January, 1860; that the road was incomplete in many respects; that it had not been completed up to that time for usual and practical railroad purposes; that the ties were laid on the prairie without excavation or embankment; and, in places, some portion of the iron which had been laid was several inches under the earth, on account of the incomplete manner of the work; he had never seen such a road called complete.

It is not believed that the statements made by Allen were calculated to deceive the defendant. It is not shown that Allen stated anything as a fact that was untrue. The defendant must have known at the time when conversing with Allen that the statements of the latter were but the expression of an opinion. Allen said the road would be completed by the fall of 1858, but upon what facts he founds that opinion is not stated. The party addressed knew the statement

of Allen was but the expression of his opinion; he speaks of a transaction to be completed, of a work to be consummated in the future, states it will be done in three years. The party addressed could not but know that this was but the opinion of the agent, Allen, and that he might be mistaken. Why, if it was of the terms of the contract that the road should be completed in three years, was the stipulation not embraced in the contract which was reduced to writing? It is evident that, if the defendant had expectations that the road would be completed to the river Navasoto by the fall of 1858, he was, however, willing to pay if it should be constructed to that point by the fall of 1859. The representations made by Allen were not such as were calculated to mislead the party to whom they were made. The manner in which the statement was made shows that it was but the expression of an opinion.

In 1 Story's Eq., § 191, it is said, that "the representations must not only be something material, but it must be something in regard to which the one party places a known trust and confidence in the other. It must not be a mere matter of opinion, equally open to both parties for examination and inquiry, when neither is presumed to trust to the other, but to rely on his own judgment."

Again, in § 199 it is said: "Nor is it every willful misrepresentation of a fact which will avoid a contract upon the ground of fraud, if it be of such a nature that the other party had no right to place reliance on it. * * Courts of equity, like courts of law, do not aid parties who do not use their own sense and discretion upon matters of this sort."

In Trower v. Newcome, 3 Mer., 704, 706, "The bill was by a vendor for specific performance of an agreement by the vendee to purchase the advowson of a certain church; alleged that the plaintiff, being seized in fee of the advowson, caused the same to be set up to sale by auction, when the defendant became the purchaser, according to the conditions of sale." The printed circular contained a descrip-

tion of the situation, number of acres, &c.    The defendant, in his answer, said he was induced to attend at the sale by the misrepresentation in the particulars above noticed; that the auctioneer, at the time of the sale, said (in explanation) that the living would be void on the death of a person aged eighty-two.

The plaintiff's solicitor, in answer to a letter from the defendant's solicitor, said: "We have no objection to the patron engaging, by covenant or bond, that the present incumbent will avoid the living on the death of a gentleman aged eighty-two." It appeared in evidence, that the incumbent of the church in question expected to be presented to another living on the death of its incumbent, who was aged eighty-two. "It was held, that the representation made by the printed circulars, so vague and uncertain that the court could take no notice of it judicially, and that its only effect ought to have been to put the defendant upon making inquiries respecting the circumstance under which the alleged avoidance was likely to take place, previous to his becoming the purchaser."

In Scott v. Hanson, 1 Sim., 13–15, "An estate was sold by auction, described in the particulars of the sale as consisting of fourteen acres of uncommonly rich water-meadow land." A suit having been instituted by the vendor for a specific performance of the contract, it appeared in evidence, that on account of the high level of this meadow and the low level of some adjoining land, the former was imperfectly watered. It was objected for the purchaser, that it was not proved to be a water meadow.    *    *    And it was insisted, that to describe it    *    *    as uncommonly rich water-meadow land was a misrepresentation, and that a court of equity ought not to assist the vendor." It was held, "that a representation which is vague and indefinite is to be treated by a purchaser only as a ground for inquiry.    *    *    "Unless, in the expression used in this case, it can be considered as a representation that the land in

question was not imperfectly, but perfectly watered; then the expression is vague and indefinite. And upon the best consideration I can give this case, I think I should not strain the meaning of the words 'uncommonly rich water-meadow land,' if I were to confine the meaning to the quality of the land; * * and in that sense it professes to be nothing more than the loose opinion of the auctioneer or vendor, as to the obvious quality of the land, upon which the vendee ought not to have placed, and cannot be considered as having placed, any reliance."

In Davis v. Meeker, 5 Johns., 354, Meeker brought an action for deceit in the sale of a wagon. She had paid the defendant $50 for the wagon, and averred that the defendant did falsely and fraudulently assert that he had been frequently offered, by different persons, $50 for the wagon, by reason of which false assertion the plaintiff was induced to believe the wagon was worth that sum, whereas, in fact, it was not worth more than $25. The plaintiff had merely seen the wagon; there was no warranty. The court held, that the plaintiff purchased the wagon on sight, and the assertion of the defendant that it was worth more than its real value furnishes no ground of action. (Snell, Stagg & Co. v. Moses & Sons, 1 Johns., 97–106; Murford v. McPherson, 1 Johns., 414–418; Holden v. Dakin, 4 Johns., 421.)

It was held, in Juzon v. Toulmin, 9 Ala., 684, "if one person make a representation to another, who is going to deal in a matter of interest upon the faith of that representation, he shall make it good if he knew it to be false. But to induce the interference of equity in such a case it is not enough to establish the fact of misrepresentation, it must also be shown to have been in a matter of importance to the interest of the other party, and that it actually did mislead him. * * But, as misrepresention in a matter of opinion and fact, equally open to the inquiries of both, and in regard to which neither could be presumed to trust

to the other, unless it be a mere contrivance of fraud in cases of peculiar relationship or confidence, or where the other party has justly reposed upon it and has been misled, furnishes no ground for the interference of equity." (Vernon v. Keys, 12 East., 632.)

The representation made by Allen, as the agent of the railroad company, cannot avail as a defense to this action. It does not appear that the defendant was not as well informed in regard to the facts as Allen was.

The completing of the railroad to the Navasoto river by the 16th of October, 1859, was a condition that must be substantially complied with to authorize the plaintiff to recover in this action, unless he may recover as a purchaser of the note, for a valuable consideration, without notice, before the note became due.

The pleadings put in issue the completing of the railroad to the Navasoto river by the 16th of October, 1859. The question was submitted to the jury on a charge to which no exceptions have been taken, and it is believed that the law of the case was fairly presented to the jury for their consideration. They have found in favor of the plaintiff. It is believed that the verdict is sustained by the evidence sufficiently to authorize an affirmance. It is shown beyond controversy that cars did pass over the line of the road more than two months before it was to have been completed by the terms of the contract between the parties to this action. The testimony does not show that at this time the work was so done that the road could be used for the purpose of transportation, without requiring hands to be on the line of the road for the purpose of repairing it, nor does the contract require that it should have been so completed as not to require repairs.

It appears that it was so completed as to be received by the agent of the State who was appointed to examine it, and that the loan was made to the road, which could only be made to roads that were completed.

XXIX.—26.

It further appears, that it was not used for the purpose of transportation until January, 1860, but it was not a condition of the note that the road should actually be used for the purpose of transporting goods or passengers. If the road was completed by the time the note became due, the conditions were discharged, and it became an absolute obligation for the payment of the money specified in it.

There is no error in the judgment, and it is

AFFIRMED.