## J. C. WOOTERS v. INTERNATIONAL & G. N. R. R. Co.

### (Case No. 1278.)

1. PLEADING.— It is not necessary to set forth in the petition the minute details of a contract on which suit is brought, to authorize its introduction in evidence. It is sufficient if it sets forth the contract according to its true and legal import and effect, as a whole.

2. PLEADING.— When suit is brought on a contract, which on its face refers to a contingency, on the happening of which the defendant should be discharged from liability, it does not devolve on the plaintiff to anticipate the defense, by averring that the contingency had not happened; but if the defendant relies on it as a defense, he must allege and prove that it did happen.

3. CONTRACT.— When parties reduce a contract to writing they are presumed to embody in it the terms and stipulations, as finally agreed to, and to which they mutually consented.

4. CONTRACT — FACT CASE.— See statement of case for allegations in an answer in a suit on written contract, which, in the absence of an averment that the defendant was fraudulently induced to suppose that the written contract contained stipulations not embraced in it, was held bad on demurrer.

5. CONTRACT.— Declarations, representations and expressions of opinion, which precede, but do not enter into or form a part of the contract as finally consummated, furnish no ground for the recovery of damages to a party deceived or misled by them; for it is his own folly to rely on them when they are not embodied in and made a part of the contract.

6. CONTRACT, CONSTRUCTION OF.— A railway company obligated itself to locate its depot at the nearest practicable point within one mile of the court house. *Held* —

   1. The word *practicable* was not used in the contract as synonymous with *possible*.

   2. The road was only bound to locate its depot at the nearest point within one mile of the court house, at which it could be done at a reasonable and ordinary cost, with reference to all the circumstances under which it was to be done, and in view of the objects and purposes inducing the contract.

APPEAL from Houston. Tried below before the Hon. W. D. Wood.

Appellee brought suit in the district court of Houston county August 24, 1875, against appellant for $1,000, on an alleged voluntary subscription agreement of appellant

to pay the H. & G. N. R. R. Co. (afterwards consolidated with the Int. R. R. Co.) that amount of money, on condition that the company would run its road through Houston county and erect a depot as near the court house at Crocket as practicable, and within one mile. Appellant pleaded a general denial, and also specially set up failure of consideration, etc.

The court sustained appellee's demurrer and exceptions to the answer. Verdict and judgment for appellee for $1,546.66, principal and interest.

The written agreement states the consideration thus: "For and in consideration of the enhanced value to be given and which is contemplated to arise to our lands and other property by the location and speedy construction of the H. & G. N. R. R., and for the further consideration of one dollar to each of us in hand paid." The condition is, "if the aforesaid railroad company shall on or before the first day of May, 1873, build its railway and run its cars to the north or northeastern line of Houston county, and establish and have a depot as near the court house as practicable, and not to be more than one mile from said court house."

The agreement contained a proviso to the effect, that if Houston county should issue bonds to the railroad company in the sum of $25,000, payable in twenty years, the agreement should be regarded as cancelled and discharged. Objection was made to reading the agreement, on the ground that the petition failed to charge that the contingency qualifying defendant's liability had never occurred.

The answer ruled out on demurrer and exceptions, besides a general denial, set up, in avoidance of the subscription, substantially the following facts: That before the agreement was signed the company had run lines of survey locating its line and a depot at a distance of a mile or more from the court house, and avowed its intention to establish a depot at such distance from Crocket, with

the fraudulent intent and purpose to induce the citizens of that town to pay it money and property to have the road constructed and a depot established nearer the court house; that the subscriptions by defendant and others were made with the view of having a depot located at the nearest practicable point to the court house, which is in the center of the public square, in order to preserve the town and keep its business on and near the public square, as was well known to said company; that defendant and other subscribers owned property on the public square, and it was considered by them that the location of the depot near the court house would enhance the value of their property, as well as prove of great convenience to the public; that before and at the time defendant subscribed the agreement, the president and chief engineer of the H. & G. N. R. R. Co., and other officers and agents of the company, stated to defendant that the depot would be located at a point about two hundred yards from the court house, and that said point was a practicable one for the depot, which representations were fraudulently made to induce said subscription; that the company fraudulently induced defendant and others to subscribe the agreement on the avowed intention of the company and its authorized officers and agents, who were then engaged in the construction of the road and soliciting said subscriptions, that the company would establish the depot at or about said point; that the consideration and inducement to the citizens to subscribe to the agreement was, that the depot should be located at or about said point as the nearest practicable point to the court house; that instead of locating the depot at said point which is convenient to the business portions of the town, convenient of access, etc., the company fraudulently and against the protests of said subscribers, including defendant, located the depot at a greater distance, to wit, one thousand yards from the court house, and at a point inconvenient of access; there

being a branch and ravine between the depot and the public square; that the company, after having secured subscriptions to the agreement, including defendant's, on the faith of the representations that the depot would be established at the point mentioned, fraudulently purchased land where the depot was and is located, and laid off lots, etc., and attempted to build up a new town called "New Crocket;" that the company by its president and chief engineer and other officers and agents, before and at the time of the subscriptions, falsely and fraudulently induced defendant to believe that the depot would be located at or about said point, and said subscription was made by defendant on the faith of the acts and declarations of said officers and agents who solicited and obtained said subscriptions, that the depot would be located at said point, and that the same was a practicable point for the location of the depot; that said officers and agents, before and at the time of said subscriptions, represented to defendant and other citizens, that said point was a practicable one, and that the most practicable location for the depot nearest the court house was within two hundred or three hundred yards, and at or near said point east of a branch, and fraudulently held out to defendant and the citizens, and promised them in consideration of their subscriptions, that the depot would be located at or about said point and within two hundred yards of the court house; and it was by reason of such statements and conduct of said officers and agents, that defendant subscribed said agreement, and defendant acted on said declarations, and was induced thereby not only to subscribe said agreement, but also to purchase property near said point on the faith of such location of the depot, and that same would enhance the value of his property, and was thereby damaged in the sum of two thousand dollars; and that in violation of said promises, and contrary to its declarations and representations, the company fraudulently located its depot about one thousand yards from the

court house and at an inconvenient point, with the intent and purpose to impair the value of the property of defendant and the other subscribers situated on and near the public square, and whereby defendant's property was greatly depreciated in value.

Appellee demurred generally, and assigned as special exception that the answer, "so far as it sets up verbal statements and other matters occurring at the time or before the signing the bond or subscription list, are insufficient in law to make a defense; and further, the defendant thereby seeks to vary the written contract between the parties thereto."

*J. R. Burnett*, for appellant.

*Nunn & Williams*, for appellee.

MOORE, CHIEF JUSTICE.— If the petition was defective, as appellant insists, for want of a proper averment of a consideration for his subscription upon which the action is founded, objection should have been taken to it by demurrer or exception. It is too late to attempt to do so after verdict by motion in arrest of judgment. Trammell *v.* Trammell, 20 Tex., 416.

The law does not require the contract or agreement, upon which an action is brought, to be set out in the petition in every minutia to authorize its introduction as evidence. The petition is sufficient if it sets forth the contract according to its true and legal import and effect as a whole. This appellee did, and had appellant made objection to the reading of the subscription in evidence, when offered by appellee, it should have been overruled. It appears from the bill of exceptions, however, that there was no objection made to the evidence on the trial below, but the objection really made, was the failure of appellee to set out the proviso to the subscription, to the effect

that the contract of the subscribers should be satisfied and discharged, in the event the county of Houston should issue to appellee its bond to the amount of twenty-five thousand dollars. · If the contingency had occurred which relieved appellant from performance of his undertaking, it devolved upon him to allege and prove it, and it was not incumbent upon appellee to anticipate his defense by averring that the county had not issued to appellee its bonds.

In our opinion the court did not err in sustaining appellee's exceptions to appellant's answer. It is not pretended that appellant did not know and fully understand the terms and conditions of the written contract or agreement into which he entered, that he was fraudulently induced to suppose that it contained other stipulations than what it did. Whatever may be said upon the subject prior thereto, it is an elementary principle, that when parties reduce a contract to writing, they are presumed to embody in it the terms and stipulations as finally agreed to, and upon and to which they mutually contract. Appellant sought in his answer to show that appellee, by the declarations and representations of its officers and agents, had agreed and undertaken to fix its depot at a different place from that at which it was subsequently located, or that appellant was induced by these representations and declarations to believe that the depot would be thus located, and that appellee was thereby estopped from locating the depot where it did. To permit these propositions to be established by parol testimony, would be to vary and set aside a written contract by parol testimony, which evidently cannot be done. Jackson v. Stockbridge, 29 Tex., 398.

It is absurd to suppose that the parties would have been guilty of the folly of entering into a written contract which, seemingly, gave appellee the privilege of locating its depot at the nearest practicable point within a mile of

the court house, or that appellee would have incurred the expense of running different lines to ascertain this point, if it was already bound to locate it, as claimed by appellant. Declarations, representations and expressions of opinion, which precede, but do not enter into or form a part of the contract as finally consummated, furnish no ground for the recovery of damages to a party. deceived or misled by them, for it is his own folly to rely upon them, when they are not embodied in and made a part of the contract. The exceptions, therefore, to appellee's claim for damages, even if a legitimate answer to an action such as this, were properly sustained.

It is somewhat difficult, if we look merely at the extracts from the charge of the court embodied in appellant's assignment of error, to understand the precise point of his objection to it. If we properly understand it, however, it is this, to wit: The court did not instruct the jury, as appellant insists it should, that appellee was bound by the contract upon which it sued, to locate its depot at the nearest possible point to the court house at which it could be placed, without reference to the cost or expense of doing this. This, however, in our opinion, is not a fair or just construction of the contract. Appellee stipulated to locate its depot at the nearest practicable point, within one mile of the court house. Now it certainly needs no engineering skill or knowledge to know that the nearest possible point at which this could be done without regard to cost, would be the nearest point to the court house at which land for this purpose could be purchased or condemned. If this was what was intended, it was idle for appellee to have stipulated that the point at which it would establish its depot should be not more than a mile from the court house. Plainly the word "practicable" was not used in this contract as synonymous with "possible," but was used and understood by the parties to this contract in its usual and ordinary sense,

as binding appellee to locate its depot at the nearest point within a mile of the court house, at which it could be done at a reasonable and ordinary cost, with reference to all the circumstances under which it was to be done, and in view of the object and purpose inducing the contract. By this instruction the question of law upon which the case turned was, we think, fairly and correctly submitted to the jury. And the evidence justified and warranted their verdict. The judgment is affirmed.

AFFIRMED.

[Opinion delivered February 11, 1881.]