BRUNER BROS. v. JAMES STRONG ET AL.

(Case No. 4974.)

1. PAROL EVIDENCE TO VARY WRITTEN CONTRACT.— All evidence regarding conversations between contracting parties, which afterwards resulted in a written contract clear in its terms, is inadmissible for the purpose of giving such contract a meaning different from that which the written words import, unless fraud, accident or mistake intervened and prevented the use of such language as was intended to convey the real meaning and intention of the parties, in which event it may be shown.

2. CONTRACT.— One contracting party who makes a representation to the other before the consummation of the contract, announcing at the time that he will not be bound by it, may enforce his contract though the representation was in the nature of an inducement to close the contract, and was incorrect, provided there was no intention to defraud; for the party to whom the statement was made had no right to negotiate on the basis that it was true, when cautioned by the other party that he would not be bound by it.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Suit by appellants on a written contract executed by appellees June 8, 1882, whereby it was agreed that appellee Strong bound himself in the sum of $3,000, with W. A. Kelsey as surety, to furnish and deliver to Bruner Bros. one thousand head of one and two-year-old heifers on or before August 1, 1882, for which they agreed to pay $7.75 per head for yearlings and $9.75 for two-year-old heifers, and in the event Strong should fail to make $1 per head profit at that price, then Bruner Bros. were to pay at the rate of $8 per head for yearlings and $10 per head for two-year-old heifers. The cattle were to be delivered in Denton county, but by subsequent arrangement they were to be delivered in Lamar county. By the terms of the contract, Bruner Bros. were to deposit $3,000 in the bank of Texarkana, subject to Strong's draft, to be used in the purchase of cattle, and they averred that the amount was deposited by them as per contract and used by Strong; that he failed to deliver them the cattle according to contract, and refused to deliver back to them their money, except $2,100 of it, leaving in their hands $900 of their original deposit. They sued for damages for failure to deliver the cattle, for damages on the bond for $3,000, and for $900 for plaintiffs' money in their hands.

Defendants set up that, as an inducement to defendant Strong to make the contract, Bruner Bros. told him they knew where he could buy the cattle very low, so as to make more than $1 per head upon them under the contract, and they refused to tell him until after the contract was made; that Bruner Bros. were cattle dealers, and defendant was ignorant of the prices of cattle and was deceived and

misled by their promise, and that the same was a material inducement to the contract, etc.; and when he found that the cattle could not be bought at the prices represented, he notified plaintiffs that he had failed and that he demanded a rescission of the contract, and that plaintiffs then offered to assist in getting the cattle, and bought one hundred and fifteen head, which he took on the contract, and which were paid for out of the deposit of $3,000 with $2,100 taken from the same; that plaintiffs also received fifty head of cattle from defendant at $10.50 per head, which leaves only $375 of plaintiffs' money in his hands, which he tendered into court and asked that the contract be canceled.

Plaintiffs demurred, and specially excepted to the answer because it sought to vary the terms of an agreement by prior and contemporaneous verbal declarations and matters not embraced in the written contract, and for reply they denied the allegations set up.

Plaintiffs' demurrer and special exceptions overruled. Judgment in favor of plaintiffs for the $900 left in defendant's hands, with interest, but no damages.

Witness J. M. Benefield testified: " I heard T. N. Bruner tell J. Strong that he knew where he (Strong) could purchase some cattle that he could make a dollar a head on. J. Strong said that if he could guaranty that, that he (Strong) would make or close the contract. Mr. T. N. Bruner said that he would give him the names of parties that owned the cattle, but could not give him the guaranty. I know that James Strong is dealing in cattle, buying and selling." I was present part of the time the contract was being made. They made the contract at my house. Mr. Strong said he would make the contract if he knew where to get cattle. Mr. B. told Mr. S. they could give him names, so as he might get terms so as to make $1 per head profit, but would not insure it. Mr. S. said if he could get the cattle he would buy them in order to get $1 per head profit; . . they would not guaranty the purchase of the cattle; . . Mr. Strong attempted to get Bruner to guaranty that he could get the cattle. Defendant James Strong testified: I told them if they would promise me $1 profit I would get them. They said they wouldn't guaranty $1 profit, but that they would get their cattle themselves, unless they could contract with me.

There was much other evidence not necessary to detail.

*Maxey, Lightfoot & Denton,* for appellant, cited on the parol evidence to qualify the contract: Wooters *v.* I. & G. N. R. R. Co., 54 Tex., 294; Jackson *v.* Stockbridge, 29 Tex., 398, and authorities.

there cited on pages 398 and 400; Smith *v.* Garrett, 29 Tex., 53; Hunt *v.* White, 24 Tex., 643; 1 Greenl. Ev., sec. 275; Self *v.* King, 28 Tex., 553; Reid *v.* Allen, 18 Tex., 241; Rockmore *v.* Davenport, 14 Tex., 602; Belcher *v.* Mulhall, 57 Tex., 17; Franklin *v.* Mooney, 2 Tex., 454; Epperson *v.* Young, 8 Tex., 135; East L. & R. R. R. Co. *v.* Garrett, 52 Tex., 133.

On the measure of damages they cited: Indianola *v.* G. W. & T. P. R'y, 56 Tex., 595; Yetter *v.* Hudson, 57 Tex., 613, and authorities there cited; Moore *v.* Anderson, 30 Tex., 230; Durst *v.* Swift, 11 Tex., 281; 2 Wait's Act. & Def., 436; Perkins *v.* Lyman, 11 Mass., 76.

*Todd & Hudgins*, for appellee, cited: Henderson *v.* R. R. Co., 17 Tex., 580; Wintz *v.* Morrison, 17 Tex., 383; Haldeman *v.* Chambers, 19 Tex., 40; Mitchell *v.* Zimmerman, 4 Tex., 79; 1 Story's Eq. Jur., § 193, and especially Story on Con., § 506, and notes; 2 Pars. on Con., titles "Fraud," "Rescission;" Hazard *v.* Irwin, 18 Pick., 95; 9 Ves. Jr., 21; Durst *v.* Swift, 11 Tex., 281–2; Moore *v.* Anderson, 30 Tex., 230; Heilbroner *v.* Douglass, 45 Tex., 403; Field on Dam., § 154 *et ante;* 2 Greenl. Ev., § 257; 2 Sedg. on Meas. Dam., p. 232 *et seq.* (7th ed.).

STAYTON, ASSOCIATE JUSTICE.— The answer to which the demurrers were urged must be considered with reference to the petition to which it was an answer. There being no pleading which put in issue the due execution of the instrument sued on, of date June 8, 1882, the question is, Did the facts stated in the answer constitute a defense which could be urged against the action based on that agreement?

It is a general rule that all evidence in regard to conversation which may have been had between parties, before reducing an agreement to writing, which may have resulted in a written contract clear in its terms, is inadmissible for the purpose of giving to such contract a meaning other than that conveyed by the language in which the parties have selected to evidence their intention. 1 Greenleaf, 275; Self *v.* King, 28 Tex., 553; Jackson *v.* Stockbridge, 29 Tex., 395; Wooters *v.* I. & G. N. R. R. Co., 54 Tex., 294.

When fraud, accident or mistake has intervened, and has prevented the use of such language as was intended to convey the real meaning and intention of the parties, then this may be shown.

In the case before us, it is not pretended that the agreement which the parties made in writing does not express the intention of

the respective parties; but it is contended that the agreement was not to be operative between the parties unless the appellants gave to the appellee, Strong, such information as would enable him to buy and deliver cattle at such price and expense as to realize to himself a net profit of one dollar per head on the cattle out of the price which the appellants agreed to pay. Such is not the legal effect of the written agreement. Under it, Strong certainly agreed to deliver the cattle absolutely; but on the face of the instrument it appears, in case he could not make, under the contract price first named, a profit of one dollar per head, that then, without reference to whether he made profit or suffered loss, he was to deliver the cattle at the advanced price named.

The agreement itself precludes the idea of any representation by the appellants which was intended or understood by the parties to be the foundation on which the contract was made; and this being true, we are of the opinion that the court erred in overruling the demurrers which went to so much of the answer as sought to avoid liability on the ground that the appellants failed to give to Strong such information as would enable him to buy and deliver the cattle, and thereon make a net profit of one dollar per head.

If we look to the evidence in the case, it is rendered more certain, if possible, than by the written contract, that the parties did not rely upon the information which the appellants were to give Strong as to where he could buy cheap cattle; for upon request by Strong that the information to be given should amount to a guaranty that the cattle could be so bought as to enable him to make the named profit, such guaranty or assurance was denied, after which the written agreement was made.

The judge who tried the case found that the representations made by the appellants to Strong in reference to where he could buy cattle so as to fill his contract with them, and make the contemplated profit, were made in good faith; if so, and the appellee was informed, before he executed the written contract, that the appellants would not guaranty or be bound by the representation which they made, then he must be held to have known that the representations were made as mere matter of opinion, upon which, if he relied, he must do so at his peril.

If a representation be made by one contracting party to another in reference to a matter affecting the contract, and the person to whom it is made be informed that the other will not be bound by such representation, then, if it proves untrue, it is not such misrepresentation as amounts to fraud that will invalidate a contract; for

such representation cannot be fraudulent if believed to be true, for the party to whom it is made has no right to rely upon it when the other informs him that he does not intend to be bound by it. Jackson v. Stockbridge, 29 Tex., 395; Wooters v. I. & G. N. R. R. Co., 54 Tex., 294; Bigham v. Bigham, 57 Tex., 238; Belcher v. Mulhall, 57 Tex., 20; Story's Equity, 191–203.

We are therefore of the opinion that, on the facts found, outside of what appears in the face of the written contract, it must be held that there was no such misrepresentation in regard to the matter as would invalidate the contract, and that judgment should have been rendered for the appellants, not only for the $900 still in the hands of Strong, of the money advanced to him by appellants, with interest at the rate of eight per cent. per annum thereon from the 1st day of August, 1882, but that the court should also have rendered judgment in favor of the appellants for $1,664, with interest thereon from the same date at the same rate, for the failure of the appellees to deliver eight hundred and thirty-four head of the cattle which he contracted to deliver; the judge who tried the cause having found that the cattle at time and place of delivery were worth $2 per head more than the contract price.

The judgment of the court below will therefore be reversed, and such judgment here rendered as the court below should have rendered; and it is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered May 13, 1884.]