## BARNES v. EARLY-FOSTER CO.
### (No. 6513.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 16, 1921.)

1. **Sales** ⬧⟹181(1)—**Buyer suing for nondelivery has burden of proof.**

In buyer's action for nondelivery, where seller pleaded a general denial, buyer was required to prove that seller failed to deliver according to his contract.

2. **Evidence** ⬧⟹448—**Parol evidence admissible to explain ambiguous contract.**

Parol testimony is not admissible to change, alter, or vary the terms of a written contract, but is admissible to explain ambiguous terms.

3. **Evidence** ⬧⟹441(1)—**Preliminary agreements presumed embraced in written agreement.**

All previous preliminary agreements are presumed to have been reduced to writing and embraced within the terms of the written agreement.

4. **Evidence** ⬧⟹420(3)—**Parol evidence is admissible to prove conditional delivery.**

Parol evidence is admissible to show that a contract was delivered conditionally.

5. **Evidence** ⬧⟹445(1)—**Extrinsic facts admissible in case of doubtful meaning.**

Facts are admissible to show subsequent agreement adding to, subtracting from, or explaining the doubtful meaning of the contract.

6. **Evidence** ⬧⟹450(8)—**Contract held unambiguous.**

Contracts to sell "about 3,000 bushels" of oats, "cars to be loaded as fast as threshed and sacked," *held* unambiguous; parol evidence that it was intended that seller should deliver only such oats as were produced on his farm being inadmissible.

7. **Sales** ⬧⟹418(2)—**Buyer's measure of damages for nondelivery stated.**

On seller's failure to deliver oats, buyer's measure of damages was the difference between the contract price and the market value of the oats at the time and place of delivery, or, if there was no market there, then the market value at the next point where the oats could be bought or sold, with such additions or de-

ductions of cost of transportation as were necessary to determine value at place of delivery.

8. **Sales** ⬧⟹418(15)—**Lost profits under contracts to resell to third persons not recoverable unless seller had notice thereof.**

Buyer on seller's failure to deliver could not recover for loss of profits under his contract to sell to third parties at a higher price unless seller in making contracts with buyer had special notice that buyer had contracted to sell to third parties, in which case the measure of damages would be the difference between the price expressed in the original contract and the price buyer was to receive.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by the Early-Foster Company against M. S. Barnes. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Williams & Williams, of Waco, for appellant.

Spell, Naman & Penland, of Waco, for appellee.

COBBS, J. Appellee filed this suit to recover the sum of $900 from appellant, damages on account of his failure to deliver oats in accordance with the contract, thereby compelling appellee to go in the open market and buy. The case was tried without a jury and the court rendered judgment for appellee in the sum of $870. The suit is predicated upon two letters addressed by appellee to appellant, each dated May 23, 1919, and each marked "Accepted" over the signature of appellant at the bottom of the letters. We copy from each letter such parts as are deemed applicable, to wit:

The first letter says:

"This confirms purchase of you of through Mr. J. L. Dodson about 3,000 bushels of No. 3 red oats in good and even weight bags June shipment at 56 cents f. o. b. Lorena and Chilton. * * * Cars to be loaded as fast as threshed and sacked."

The second letter is in all particulars the same, except it says:

"About 3,000 bushels of red oats in good about even weight bags shipment first week in July at 55 cents. If shipped in June, 56 cents f. o. b. Lorena and Chilton. * * * Cars to be loaded as fast as threshed and sacked."

The defense pleaded was general denial, and specially that when the contract was entered into it was well known the only oats appellant had were then in the field unmatured and unharvested, and it would be several months before they would be harvested and ready for the market; that the sale was with reference to the delivery of those unharvested oats; that there was no agreement to deliver specific number of bushels, but only

---

⬧⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

such as were harvested from his field, and the quantity stated was only to be a proximate estimate of what it was contemplated in the minds of the parties would be secured from the farms, and not otherwise; and as indicating such intention the word "about" was written in the contract after the same had been written.

It was also averred that it was through no fault of his that the oats were not delivered, but because, by the unprecedented weather and storms, the crop of oats on this farm were practically destroyed and he was unable to harvest any quantity of red oats, but the small quantity of damaged oats which he did harvest was tendered appellee and he declined to receive them or pay for them, which act relieved appellant from further liability.

It was further answered that when the agreement was made it was understood that only such oats as were threshed, sacked, and loaded in the cars at the point from which they were to be shipped were to be delivered and paid for, and such interpretation was indicated by the language of the contract itself, to wit, "cars to be loaded as fast as threshed and sacked," fixing the time of delivery and quantity of sacks; that thereafter, on account of certain written instruments, referring to the agreement from appellee's president, appellant called upon Mr. Dodson, appellee's agent, with whom the contract was made, and was assured by him said contracts related only to such No. 3 red oats as the appellant was able to harvest, and did not require defendant to deliver oats to the plaintiff unless the same were harvested from his farm, and that was the reason the word "about" was written before the words "3,000 bushels of No. 3 red oats"; that on account of the fraudulent representation of Dodson, who was acting as the agent for appellee at the time, the full terms were not incorporated in the agreement; it was because of the fraud and misrepresentation of appellee's agent and on account of mutual mistake the true terms were not incorporated in the agreement as understood and agreed upon, both before and subsequent to the agreement, which is incomplete and does not embrace all the terms agreed upon; further, owing to the unprecedented rains and storms—the act of God—appellant was unable to harvest, gather, and secure any considerable bushels of said oats for delivery, but tendered all that were harvested; that it was in the contemplation of the minds of the parties when the agreement was made that appellant was contracting to sell, and appellee to pay for, only such oats as he harvested, and would not be required to go in the open market to purchase the oats for delivery, and if such be not the true construction to be put upon such contract and it be construed that the appellant was nevertheless required to deliver the oats whether produced on appellant's farm or not, then it was made and based upon mutual mistake of the parties.

Appellee filed several special demurrers against all these defenses, which the court sustained, and appellant was not allowed to introduce any evidence thereupon.

It is contended that the word "about" was to indicate that no definite quantity of oats was required to be delivered; that it was understood that the defendant would harvest No. 3 red oats from his farm, and that it was not in the contemplation of the minds of the parties that appellant should go out on the open market and purchase oats to deliver to appellant as a compliance with the agreement.

[1] The first assignment is that there is no evidence that the appellant breached the contract by failing to deliver oats as alleged he contracted to deliver. There is no fact proven in this case by appellee other than the contracts stated above and the market price of the oats at the time and place designated in the contract for delivery. Appellee practically admits the failure to make the proof, but says he would have done it, but the court's attention was directed to the appellant's efforts "to introduce parol testimony, and in the face of his admissions in the pleading the evidence of nondelivery was not as full as would otherwise have been in the case." Appellee insists the answer admits the evidence of nondelivery. The appellants pleaded a general denial, and this put appellee upon proof of his case, and this proof was essentially necessary. Gillett v. M., K. & T. Ry. Co., 68 S. W. 61; Carter v. Olive, 128 S. W. 478; Dobson v. Zimmerman, 118 S. W. 236; Brito v. Faver, 25 S. W. 445.

The first assignment of error is sustained.

[2-4] Appellant complains in a number of assignments that the court erred in sustaining exceptions to the answer, in which he sought to change and modify by parol evidence the terms of the contract. It is too well settled to cite authorities that parol testimony is not admissible to change, alter, or vary the terms of a written contract. It is also true that the presumption is that all previous preliminary agreements have been reduced to writing and embraced within the terms of the written agreement. It is always admissible to allow parol evidence to be introduced to explain the terms of an ambiguous writing. So it is admissible to show that a contract is delivered conditionally and to explain, but not vary, its terms. Farrar v. Holt, 178 S. W. 619; National Novelty-Import Co. v. Duncan, 182 S. W. 889; Meeks v. Holmes Commerce Co., 154 S. W. 365.

[5, 6] Facts are admissible to show a subsequent agreement, adding to, substracting from, or explaining the doubtful meaning of the contract. Ross v. Moore, 191 S. W. 853;

Eubank v. Bostick, 194 S. W. 214. There is no ambiguity in the writing that requires proof to explain it. There are no such allegations of fraud in its procurement or terms left out by mutual mistake as would permit proof to explain or vary it. There is no sufficient pleading or evidence tendered of any subsequent change or new contract as would admit of proof, nor that the contract was delivered with any conditions to it, nor of any consideration for any new agreement as a substitute for the original contract. Bruce v. Brown et al., 25 S. W. 444. Assignments Nos. 2, 3, and 4 are overruled.

[7] Appellant's fifth assignment and propositions are to the effect that the court erred in not holding that damages for the breach of a contract to deliver produce for which there is a regular market is the difference between a reasonable market value at the time and place of the breach and the contract price. The contract sued upon expressed the price to be paid for the oats, but appellee's petition seeks to recover special damages because he avers he had to go in the open market and buy oats to fill contracts made with other parties. The measure of damages in this case was the difference between the contract price and the market value of the oats at the stated times at the place of delivery, or, if there was no market there, then the market value at the next point where the oats could be bought or sold, with such additions or deductions of cost of transportation as necessary to determine value at place of delivery.

[8] That would make no difference, if appellee had contracted to sell the goods for a higher price, or if it cost him more at some other place to supply the oats under his contracts to other parties at a higher price, unless in making the contracts appellant had special notice that appellee had contracted to so sell the oats; then the measure would be the difference between the price expressed in the contract between the amount appellee was to pay and the amount he was to recover. Woldert Grocery Co. v. Veltman, 83 S. W. 224; Grain Co. v. Grain Co., 178 S. W. 555.

There is no allegation that appellant was aware of the fact, at the time the contract was made, that appellee was buying oats to fill special contracts, nor was it alleged at what place the oats were purchased; simply that it costs 15 cents per bushel more than the contract price to fill his contracts.

The correct rule for the measure of damages is as stated above, and has not been administered herein, and we sustain appellant's assignments.

For errors committed, as shown, by the trial court in the rulings, the judgment is reversed and the cause is remanded for a new trial.