**ROSS & SENSIBAUGH**

v.

**McLELLAND.**

No. 15442.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 2, 1953.

Rehearing Denied Nov. 20, 1953.

Martin & Moore, Brewster, Pannell, Lee-
ton & Dean, and Leo Brewster, Fort
Worth, for appellant.

Samuels, Brown, Herman & Scott, and
Ardell M. Young, Fort Worth, for appel-
lee.

BOYD, Justice.

On February 23, 1951, appellee J. E. Mc-
Lelland and appellants W. R. Ross and R.
O. Sensibaugh entered into the following
contract in writing:

"Cattle Contract
"State of Texas
"County of Tarrant

"This contract made and entered into this
23rd day of February, 1951 by and between
J. E. McLelland of Freestone County,
State of Texas, Party of the First Part,
and W. R. Ross & R. O. Sensibaugh of
Tarrant County, State of Texas, Party of
the Second Part, witnesseth:

"That the first party has this day agreed
to purchase, and the second party has this
day agreed to sell and deliver unto the first
party at shipping pens f. o. b. cars Ben-
jamin, Texas, from this date to June 1,

1951 the following described cattle at prices herein set-forth.

"Fifteen (1,500) hundred cattle, with calves thrown in, at $283.50 per head. These cattle are carrying circle brand behind left shoulder and located on the W. R. Ross Ranch in King County, Texas.

"Said cattle are to be delivered, if requested, by pasture. The Party of the First Part agrees to give the Party of the Second Part at least seven (7) days' notice of delivery.

"The cattle are carrying about the following old brands: 550 **C O** & W 250 Ɏ Ɏ, 182 shash on nose, and the balance with various brands.

"The Party of the First Part is to pay in full for the first 500 head received, and as he receives the balance he is to deduct $40.00 per head until delivery is completed, where-in he will have received credit for the $40,000.00 deposit.

"In addition to the above cattle, there will be forty (40) baloney bulls, owners cut, at 25 cents per pound, with three percent shrink, to be weighed at the W. R. Ross Ranch in King County, Texas. Said bulls to be delivered July 1, 1951.

"All unmerchantable cattle such as lump jaws, bad eyes, cripples or defective cattle of any kind shall be taken out before the ten percent cut is made.

"Second party acknowledges receipt of $40,000.00 paid by first party, as partial payment on said cattle, balance to be paid upon delivery of the cattle at $283.50.

"In witness whereof said parties have set their hands in duplicate the day and year above written.

"Witnesses

(s) "H. M. White    (s) "J. E. McLelland
                         "Party of the First Part
                         (Buyer)

(s) "Milo McNairy   (s) "R. O. Sensibaugh
                         "W. R. Ross
                         "Party of the Second Part
                         (Seller)"

Appellee filed this suit for damages and for an accounting, alleging that appellants breached said contract, and that he was ready, able, and willing to perform.

Appellee pleaded that under said contract appellants agreed to sell and he agreed to buy "1,500 head of cows with the calves thrown in, less the unmerchantable cattle such as lump jaws, bad eyes, cripples or defective cattle, and less 10% which the plaintiff could cut out and refuse to accept with or without reason," and in the alternative that the contract "was ambiguous and the number of cattle the defendants agreed to sell and he agreed to purchase is indefinite and uncertain," and that "it was the true intention of the defendants and himself that not more than 1,500 head of cattle would be gathered and rounded up by the defendants; that the unmerchantable cattle would then be taken out of said group so gathered and rounded up, and after the unmerchantable cattle were taken out, the plaintiff would then be given a 10% cut, which meant that the plaintiff would actually be purchasing and paying for approximately 1,300 head of cows with the calves thrown in at $283.50 per head." He prayed for a judgment for $32,068 for money he had on deposit with appellants as part payment for said cattle; for $1,000.76 trucking expense for trucks he procured to haul the cattle appellants refused to deliver; for $12,452.50, being the difference between the contract price and the market value of cows, and for $1,560, being the difference between the contract price and the market price of the 40 bulls, all of which he alleges appellants refused to deliver.

Parol evidence was offered and admitted over appellants' objections to sustain appellee's allegations as to the intention of the parties. At the conclusion of the evidence appellants moved for an instructed verdict, which motion was overruled, and the jury found as follows: That it was the intention of the parties that appellants would be able to round up only about 1,500 cows in fulfilling the contract; that appellee would be required to accept approximately 1,500 cows less the unmerchantable cattle and less the ten per cent cut; that he would be required to accept

only one delivery out of each pasture; that on June 4, 1951, appellants refused to deliver to appellee the cows then rounded up, less the ten per cent cut, because of appellee's refusal to agree to return later and accept delivery of additional cattle to be rounded up, and refused to allow appellee credit on the cows then ready for delivery for the money he had on deposit with appellants; that appellants demanded a deposit of approximately $5,000 as security for the purchase of the 40 bulls; that on June 4, 1951, appellee "had made arrangements whereby he was financially ready, able, and willing to pay for" the 112 Kenneth Cook cows and the other merchantable cows rounded up, less the ten per cent cut; that the market value of the Cook cows on June 4, 1951, was $212.-50 per head, the market value of the other merchantable cows, less the ten per cent cut, which were then rounded up was $307.50 per head, the market value of the bulls on July 1, 1951, was $380.24 per head, and that appellee was then ready, able and willing to pay the contract price for the bulls, and that the trucking expense was $1,000.76. Judgment was rendered for appellee for $34,697.92, with interest at six per cent from June 4, 1951, on $32,067.56, and interest at six per cent on $2,630.36 from the date of the judgment.

Appellants' first point is that the court erred in overruling their motion for an instructed verdict, the contention being that under the contract and the undisputed competent evidence it was established that appellants agreed to sell and appellee agreed to buy 1,500 head of cattle at $283.50 per head, that he failed and refused to accept and pay for the remaining cattle he was obligated to buy under the contract, and that he was not financially able to pay for the remaining cattle. Their argument is that the provisions of the contract as to the number of cows which appellee agreed to accept and pay for are plain and unambiguous, and that parol evidence was inadmissible to vary or contradict those provisions, and that the undisputed evidence shows that appellee was neither ready, able, nor willing to accept and pay for the full

1,500 head. Appellee admitted receiving only 853 cows and testified that he was willing to accept 435 more, which he claimed was all he was obligated to take.

In the absence of fraud, accident, or mistake, parol evidence is inadmissible to vary, add to, or contradict the terms of a valid written instrument. This is a proposition of such universal acceptation that it is unnecessary to cite authorities to sustain it.

The construction of a contract given by the parties is ordinarily not admissible where the terms of the contract are plain and unambiguous. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Ranger Cisco Oil Co. v. Consolidated Oil Co. of Texas, Tex.Civ.App., 239 S.W. 648, writ dismissed; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; El Paso & S. W. R. Co. v. Eichel & Weikel, Tex. Civ.App., 130 S.W. 922, writ refused; Rowles v. Hadden, Tex.Civ.App., 210 S. W. 251, writ refused. Parol evidence is not admissible to show that the terms or the legal effect of the contract do not accord with the previous understanding of the parties. In Henderson v. Scott Oil & Refining Co., Tex.Civ.App., 258 S.W. 1082, 1086, writ dismissed, Judge Conner, speaking for this court, said:

"* * * plain legal implications arising from the terms of a written contract are as fully protected by the rule as the terms themselves. In 10 R.C.L. p. 1046, it is said:

" 'As a rule, parol evidence is not admissible to vary a written contract, either by showing that its expressed terms, or its legal construction and effect, do not accord with the previous agreement of the parties. Whatever the law implies from a contract in writing is as much a part of the contract as that which is therein expressed, and if the contract, with what the law implies, is clear, definite, and complete, it cannot be added to, varied, or contradicted by extrinsic evidence.' " See also Murphy v. Dilworth et al., supra; White,

Ward & Erwin v. Hager, 112 Tex. 516, 248 S.W. 319; El Paso & S. W. R. Co. v. Eichel & Weikel, supra; 12 Am.Jur., p. 757, sec. 233; 17 C.J.S., Contracts, § 325, p. 761.

The reason underlying the rule that parol evidence is inadmissible to vary or contradict the terms of written instruments is given by the court in San Antonio Machine & Supply Co. v. Allen, Tex.Com.App., 284 S.W. 542, 544, as follows: "If the judgments of the lower courts should stand in this case, it would only mean that a contract the parties reduced to writing has been grossly violated by the introduction of parol testimony. The advantage of upholding written contracts as written has long been recognized by all the courts. The agreements of the parties are reduced to writing in order to avoid the very thing which has been here attempted."

█ The parol evidence rule is not merely one of procedure, but is one of substantive law, and evidence admitted in violation of it is without probative force, even though not objected to. Texarkana & Ft. S. R. Co. v. Brass, Tex.Com.App., 260 S.W. 828; John E. Morrison Co. v. Riley, Tex.Civ.App., 198 S.W. 1031; Southern Surety Co. v. Nalle & Co., Tex.Com. App., 242 S.W. 197; Henry v. Phillips, supra. In Texarkana & Ft. S. R. Co. v. Brass, supra, the court said [260 S. W. 830]: "And finally, in the present consideration, a corollary to the foregoing rule, and a principle that vitalizes it, is that it is not merely a rule of procedure but is one of substantive law. Because there is a written contract that has merged and destroyed the identity and force of all acts and intentions leading up to it, whether parol evidence of such acts and intentions be admitted without objection, or be sought to be established by argument or inference from facts admitted without objection, it equally follows that the outside matter, in the absence of ambiguity, fraud, accident, or mistake with respect to the contract, or of some other recognized 'exception,' is 'incompetent,' is 'without probative force,' is 'intrinsically without weight,' 'cannot be shown,' and 'will not support a verdict.' * * *"

█ But when a contract is ambiguous, and parol evidence is therefore admissible to explain the ambiguity, such evidence is not competent to vary its terms, or to contradict the legal effect of the unambiguous provisions of the instrument. Barnes v. Early-Foster Co., Tex.Civ.App., 228 S.W. 248; Remington Rand Co., Inc., v. Sugarland Industries, 137 Tex. 409, 153 S.W. 2d 477; Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778; Higginbotham Cattle Co. v. Whaley & Lewis, Tex.Com.App., 41 S.W.2d 34; San Antonio Machine & Supply Co. v. Allen, supra; Murphy v. Dilworth et al., supra; Southern Gas & Gasoline Engine Co. v. Richolson, Tex.Com.App., 216 S.W. 158; McBride v. Ponder, Tex.Civ.App., 242 S. W.2d 253, refused n. r. e.

██ If a contract on its face is capable of being given a definite legal meaning, parol evidence is not competent to render it ambiguous. Remington Rand Co., Inc., v. Sugarland Industries, supra; Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977.

The meaning of such contract is to be determined by the court as a matter of law from the writing without aid from evidence of the attending circumstances. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A. L.R. 1217; Soell v. Haddon, 85 Tex. 182, 19 S.W. 1087; Graham's Estate v. Stewart, Tex.Civ.App., 15 S.W.2d 72; Arcola Sugar Mills Co. v. Farmer Hamlett's Co., Tex.Civ. App., 220 S.W. 385, writ dismissed; 12 Am.Jur., p. 786, sec. 248. And it cannot be shown by parol evidence that the parties intended that clear and unambiguous terms of a contract should mean something different from or contrary to the provisions expressed. Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47; Cassel v. West, Tex.Civ.App., 98 S.W.2d 437, writ refused; 17 C.J.S., Contracts, § 29., p. 695, and cases there cited.

Looking to the language of the contract involved in this case, we find that it provides for the sale and purchase of a certain and definite number of cattle. From its language it appears that appellants agreed to sell and appellee agreed to purchase "Fifteen (1,500) hundred cattle, with calves thrown in, at $283.50 per head. * * *" In our opinion, the language will not admit of any construction other than that the number of cattle to be sold and bought was exactly 1,500. Appellee contends that the contract was for the sale and purchase of "approximately 1,300 head of cows with the calves thrown in." As was said in Coverdill v. Seymour, 94 Tex. 1, 57 S.W. 37, 38, "It is clear to our minds not only that the contract does not state the agreement contended for, but that it excludes it." Moreover, appellants were to "deliver unto the first party at shipping pens f. o. b. cars Benjamin, Texas," 1,500 cattle, and appellee's draft for the $40,000 deposit bore the notation, "For Part Payment on 1500 cattle." In addition to the express terms of the contract fixing at 1,500 the number of cattle sold and purchased and to be delivered at shipping pens f. o. b. cars, Benjamin, Texas, and the draft being for part payment on 1,500 head, the contract provides that after the first 500 head have been paid for in full, "as he receives the balance he is to deduct $40.00 per head until delivery is completed, where-in he will have received credit for the $40,000.00 deposit." $40 credit per head until $40,000 has been applied, can only mean that such credit will be applied to 1,000 head; and since no application of such credit is to be made on the first 500 head, the total number is the sum of 500 and 1,000.

Appellee has no complaint of such arithmetic, but he says that the parties intended that the unmerchantable cattle and the ten per cent cut were to be taken out of the 1,500 head, and he was to receive and pay for "approximately 1,300 head." Of course, the only way that could be shown was by the introduction of parol evidence.

Appellee admits the binding force of the parol evidence rule, but he argues that the written contract is ambiguous and the number of cattle appellants agreed to sell and he agreed to purchase is indefinite and uncertain, and that parol evidence was admissible to show "the true intention" of the parties.

We cannot agree that the contract is ambiguous as to the number of cattle to be sold and bought. Appellee strongly insists that "delivery by pasture" and "ten per cent cut" are ambiguous terms. Even though the correctness of that contention be conceded, the admission of parol evidence to show that the parties did not mean what they said in the unambiguous provisions of the contract would collide with the rule that parol evidence, when admissible to explain an ambiguity, is not competent to vary or contradict the legal effect of the unambiguous provisions of the instrument. Regardless of what "delivery by pasture" or "ten per cent cut" may mean, it is not competent, in explaining those terms, to prove that, after the unmerchantable cattle and the ten per cent cut of the merchantable cattle are eliminated, a contract calling for "delivery by pasture" and paying for 1,500 head of cattle means to "deliver by pasture" and pay for "approximately 1,300 head." There being no ambiguity as to the number of cattle to be sold and delivered, bought, received and paid for, in the absence of allegations of fraud, accident, or mistake, parol evidence was inadmissible and incompetent to change the expressed obligation. Arcola Sugar Mills Co. v. Farmer Hamlett's Co., supra; Bruner Bros. v. Strong, 61 Tex. 555; Wooters v. International & G. N. R. R. Co., 54 Tex. 294; Milliken v. Callahan County, 69 Tex. 205, 6 S.W. 681. The writing purports to obligate appellee to buy, receive and pay for 1,500 head of cattle, and to hold that parol evidence is admissible to establish the fact that less than that number was intended would restrict the legal effect and operation of the contract. McCullough v. Farmers' & Merchants' Nat. Bank of Abilene, 58 Tex.Civ.App. 160, 123 S.W. 439. And it would allow appellee to recover upon another and different contract from that sued upon. Belcher v. Mulhall & Scaling, 57 Tex. 17.

Appellee did not allege that he was able and willing to receive and pay for the balance of 1,500 cattle, or that appellants breached their obligation to sell 1,500 cattle; and since the contract obligated him to buy 1,500 head, and that in the absence of fraud, accident or mistake parol evidence was inadmissible to establish the intention of the parties as alleged by him, we hold that the judgment is not supported by competent evidence.

Error is assigned on the submission of issue No. 8 wherein the jury was asked whether on June 4, 1951, appellee "had made arrangements whereby he was financially ready, able, and willing to pay for the 112 Kenneth Cook dry cows and the other merchantable cows rounded up and gathered, less plaintiff's cut of the ten per cent." Appellants objected, among other reasons, because the issue was on the weight of the evidence and directed the jury's attention to the claim made by appellee and his witnesses that while he did not have the money, appellee had made arrangements that enabled him to pay for the cattle he was that day willing to receive. Without setting out the voluminous testimony on the point, it is enough to say that the sufficiency of the "arrangements" was bitterly contested. We think the ultimate issue was not whether appellee had made arrangements, but whether he was then financially ready and able to pay. In Speer's Special Issues, p. 251, sec. 193, it is said, " * * * If the interrogatory is so worded as to indicate any opinion whatever of the trial judge as to the verity of the fact inquired about, it is error as a usurpation of the exclusive jury function. If the wording be such as is reasonably calculated to have such effect and there is reasonable doubt whether it did have such effect or not, the matter is resolved against the issue, * * *." The author cites many cases in the footnote to the text.

Another point is that it was error to exclude the testimony of the witness Hickey that he had up with appellee a forfeit of $10,000 on 350 of the Ross and Sensibaugh cows he agreed to buy from appellee, and testimony of Ross that he reminded appellee of that fact in a conversation in which Ross asked for a deposit of $5,000 if appellants granted Hickey's request for an extension of time for delivery of said cows. Hickey testified that appellee did not ask him to advance any more money to appellee. This conversation was originally gone into by appellee. It was shown that appellee told Ross of Hickey's request, and that appellee intended to pay appellants for those cows out of the money Hickey had paid and was to pay him. Ross would have testified that he told appellee in that conversation that " * * * I didn't have a cent up on that and that he had the ten thousand dollar down payment and I didn't have anything, and if I extended the time, it would cost money and grass—expenses and I wanted somebody to put up five thousand dollars more, if I gave the extension." Appellants previously had some trouble collecting for deliveries made to Hickey and others who bought from appellee some of the cattle covered by this contract.

Where a witness has testified to part of a transaction, the opposing party may bring out the whole of the transaction. Yarborough v. Davis, Tex.Sup., 15 S.W. 713; Missouri, K. & T. Ry. Co. of Texas v. Lindsey, Tex.Civ.App., 101 S.W. 863. And where a witness is put in a bad light by the development of testimony on cross-examination he may, by pertinent explanation, remove the unfavorable impression. First Nat. Bank v. Pearce, Tex.Civ. App., 126 S.W. 285; Martini v. Power Banking Co., Tex.Civ.App., 33 S.W.2d 466, writ dismissed. We believe that as the matter was presented, the testimony was admissible.

Error is assigned to the admission in evidence of a contract made in 1950 whereby appellants agreed to sell to Noel Reynolds "approximately" 1,400 Hereford cows and evidence that they actually delivered 1,247. We think this evidence was irrelevant and prejudicial. It was a different contract, a different kind of contract, and between different parties from

212

that sued upon. 17 Tex.Jur., p. 388, sec. 135 and cases there cited; Williams v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 218 S.W.2d 482, refused n. r. e. Appellee insists that this evidence was admissible as tending to show the number of cattle appellants had on their ranch after the sale to Reynolds, and that the best evidence as to the number of cattle they had on the ranch in 1950 was the number they had agreed to sell to Reynolds; and that the best evidence as to the number of cattle they still had on the ranch after the delivery to Reynolds was the difference between the number they agreed to sell and the number they delivered. One trouble with this argument is that the Reynolds contract nowhere mentions any ranch, nor otherwise indicates where the cattle may be located, and even if the number left on the ranch in 1950 would tend to establish the number on it when the contract in suit was made, we think it was immaterial to show any number different from the number specified in the contract.

The judgment is reversed and the cause remanded.

On Motion for Rehearing

RENFRO, Justice (dissenting).

In my opinion appellee's motion for rehearing should be granted and the judgment of the trial court affirmed.

The contract in question is set out in full in the opinion of the court.

In my opinion the contract is ambiguous. It is not clear whether the parties intended by the instrument that McLelland buy exactly 1,500 head of cattle or whether they intended that he buy 1,500 head, less unmerchantables and the ten per cent cut.

According to the contract, the first party, McLelland, agreed to buy and second party, Ross & Sensibaugh, agreed to sell and deliver 1,500 head of cattle with calves thrown in. Then follows the provision that said cattle are to be delivered by pasture. Another provision obligated McLelland to

pay in full for the first 500 head and as he received the balance he is to deduct $40 per head until delivery is complete, wherein he will have received credit for the $40,000 deposit. Then comes a provision providing "all unmerchantable cattle * * * shall be taken out before the ten per cent cut is made." Then follows the acknowledgment of $40,000 received "as partial payment on said cattle, balance to be paid upon delivery of the cattle at $285.50."

The cardinal rule in construing a contract is to ascertain and give effect to the intention of the parties. 10 Tex.Jur., p. 272, sec. 159. The contract must be read and considered and construed as a whole and all of its provisions must be taken into consideration and construed together in order to ascertain its meaning and effect.

The provision "all unmerchantable cattle, such as lump jaws, bad eyes, cripples or defective cattle of any kind shall be taken out before the ten per cent cut is made" and the provision "said cattle are to be delivered, if requested, by pasture" pose questions which render the contract as a whole ambiguous and unclear. The term "ten per cent cut" has a meaning peculiar to cattle dealers; so also has the reference to delivery by pasture. A person inexperienced in buying and selling cattle and unfamiliar with the cattle business cannot, without extrinsic evidence, determine the meaning of those expressions.

Do the words in the contract when read as a whole mean that after rejecting the unmerchantable cattle and after taking the ten per cent cut, the appellee must take 1,500 cattle? It seems to me that one could as readily conclude from reading the contract that McLelland will take 1,500 head of cattle less the unmerchantables and less the ten per cent cut. Parol evidence was admissible to explain what the parties really intended by their contract.

The evidence was sufficient to uphold McLelland's construction of the contract and to support the jury findings in his favor.

Other points of error urged by the appellants do not in my opinion present errors of sufficient consequence to require a reversal.

It is respectfully submitted that the judgment of the trial court should be affirmed.