ROWLES v. HADDEN et al.  (No. 932.)

(Court of Civil Appeals of Texas. El Paso. March 6, 1919. On Rehearing, March 27, 1919.)

1. CONTRACTS ⬤170(1) — PRACTICAL CONSTRUCTION.

Where a contract is indefinite or ambiguous, but only in that event, acts and conduct of the parties done with knowledge and in view of the contract are to be considered and given weight in construing the contract.

2. CONTRACTS ⬤170(1) — CONSTRUCTION — ACTS OF PARTIES—"ACRE FOOT."

A contract providing that purchasers of land should have "fifteen acre feet per annum of its water, or so much water as would be necessary to irrigate fifteen acres of land," etc., held not ambiguous so as to allow consideration of the acts of the parties in construing the contract, the term "acre foot" expressing a technical, definite, and specific volume or quantity of water, 325,850 gallons, or the amount of water which will cover one acre one foot in depth.

3. WATERS AND WATER COURSES ⬤158(2)— CONTRACTS—AMOUNT OF WATER TO BE FURNISHED.

The fact that a water company actually and voluntarily delivered more water than was called for in a contract, without extra charge, had no binding effect on water company in favor of a subsequent purchaser of irrigated lands, who had knowledge thereof.

4. PLEADING ⬤312—EXHIBITS—VARIANCE.

Where a written instrument is made part of a petition, court will, on demurrer, give to instrument the legal effect to which it is entitled, and legal effect will control when allegations of petition and recitals of instrument as to legal effect are found in conflict.

5. WATERS AND WATER COURSES ⬤247(1)— ACTIONS AGAINST WATER COMPANIES — PLEADING—SUFFICIENCY.

A petition against a water company to compel it to furnish water under a contract did not raise issue that it was defendant's duty to supply water sufficient to properly irrigate land, where it was not alleged that defendant was a public service corporation, or that the price asked for water required in excess of that contracted to be delivered was unreasonable.

Appeal from District Court, Pecos County; Jas. Cornell, Judge.

Suit by Dill V. Rowles against W. A. Hadden, trustee, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

R. D. Blaydes, of Ft. Stockton, Starley & Drane, of Pecos, and Burges & Burges, of El Paso, for appellant.

Harkless & Histed, of Kansas City, Mo., W. A. Hadden, of Ft. Stockton, and Blanks, Collins & Jackson, of San Angelo, for appellees.

WALTHALL, J. Dill V. Rowles brought this suit against Wl. A. Hadden, trustee, John Rooney, John Odom, Dan Bihl, James Rooney, and F. S. Wilson, on what is called in the pleading a permanent water right contract providing for the furnishing of water for purposes of irrigation for lands for farming purposes from an irrigation system owned and operated by appellees.

The trial court sustained a general demurrer to the petition. Appellant declining to amend, judgment was entered dismissing the suit at appellant's cost. Appellant here complains of the ruling of the district judge sustaining the general demurrer. The petition is lengthy but as, in this case, it is both pleading and statement of facts, we copy it in full, and will thereafter make such statement of the exhibits as may be deemed necessary:

"Your petitioner Dill V. Rowles, hereinafter styled petitioner, complaining of Wm. A. Hadden, trustee, John Rooney, John Odom, Dan Bihl, James Rooney, and F. S. Wilson, hereinafter styled defendants, respectfully represent and shows to the court:

"First. That your petitioner is a resident citizen of the county of Pecos and state of Texas.

"Second. That the defendants herein are all resident citizens of the state of Texas and county of Pecos.

"Third. For cause of complaint your petitioner represents and shows to the court that the Ft. Stockton Irrigated Lands Company is a corporation duly and legally incorporated under the laws of the state of Texas, and was engaged in the business of owning, developing, and selling lands and water rights for irrigated farms, and in the business of owning, operating, and maintaining in Pecos county, Texas, irrigation dams, reservoirs, ditches, canals, and laterals, and selling, delivering, and furnishing water by means thereof to farms and lands for purposes of irrigation.

"Fourth. That heretofore petitioner bought of the Ft. Stockton Irrigated Lands Company, a corporation duly and legally incorporated under the laws of the state of Texas, certain lands and water rights appurtenant thereto situated in Pecos county, Texas, and by reason of his several purchases of lands and water rights is entitled to have water delivered to him upon his said farms in accordance with the terms of his several contracts.

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Fifth. That prior to the sale of said lands to this plaintiff the said Ft. Stockton Irrigated Lands Company, as the owner and possessor of a large tract of land in the valley of the Comanche creek in Pecos county, Texas, had platted and subdivided said lands so owned and possessed by it into farm units, and which farm units were by it designated by lot and block numbers, and had filed and recorded in the office of the county clerk of said Pecos county, Texas, a map and plat of said lands, with irrigation canals, ditches, and laterals delineated thereon, and with the said farm units marked and designated thereon by lot and block numbers, and that all sales of farm units made, and contracted to be made, by said Ft. Stockton Irrigated Lands Company, were by lot and block numbers, as marked and designated on said recorded map, to which reference was made in the deeds of conveyance delivered, and contracted to be delivered, for description of the tracts of land and farm units sold and intended to be conveyed by the deeds executed, and contracted to be executed and delivered.

"Sixth. Your petitioner further represents and shows to the court that in offering said lands and farm units for sale to this plaintiff, and as an inducement to him to purchase said lands and water rights, said Ft. Stockton Irrigated Lands Company made certain representations to petitioner of the class and character of farm, garden, and fruit crops said land would produce, and specifically represented to him, both orally and in written and printed matter, that said water right guaranteed sufficient water to irrigate said land, and that a foot of water (meaning thereby an amount of water sufficient to cover said tracts of land one foot in depth) upon the land during the irrigation season was sufficient for any and all crops adapted to said land; that this plaintiff was not, by experience or otherwise, acquainted with the measurement of water, the character of soil on said lands, or the climatic conditions of the country wherein the same are situated with reference to the amount of moisture required and necessary to produce crops thereon, but that the said Ft. Stockton Irrigated Lands Company, and its officers, servants, and agents, were, or should have been, acquainted with all such matters, and that plaintiff had a right to and did rely upon the truth of such representations, and that relying upon the truth of the matters so represented to him by the Ft. Stockton Irrigated Lands Company through written and printed matter, and the oral representations made in its behalf by its officers, servants, and agents, James W. Oldham, William B. Burget, and others, this plaintiff bought lands of said company.

"Seventh. Your petitioner further represents and shows to the court that he now owns and holds farm units so sold, or contracted to be sold and conveyed, by the said Ft. Stockton Irrigated Lands Company or its vendees, and that the perpetual water right and right of water service upon the several farm units is in all instances and cases appurtenant to the lands described in his deeds, a form showing the terms of which is hereto attached marked 'Exhibit A' and made a part hereof. ·

"Eighth. Your petitioner, relying upon the truth of such representations so made to him, bought of said company those certain farm units known and described on the map and plat so filed for record by said company as tracts numbered fifty-three and fifty-four (53 and 54) in section No. eight (8), and through the purchase of another contract tract No. fifty-eight (58) in block No. one (1), and section No. six (6), all in block No. 1 of the Ft. Stockton Irrigated Lands Company, all of which will more fully appear from the deeds hereto attached, marked Exhibits —— and made a part hereof.

"Ninth. That by the terms of the contract of sale for said lands, and the form of deed for a perpetual water right thereto attached, as a part and parcel of said contract, a copy of the form of which contract and deed of perpetual water right is attached hereto marked Exhibit A and made a part hereof, the said Ft. Stockton Irrigated Lands Company sold and conveyed to this petitioner, with land sold to him, a perpetual water right for the irrigation of said lands, conveying 'an amount of water sufficient to cover said tracts of land one foot in depth,' and such an amount of water as should be 'required to properly irrigate said land,' and obligated itself to deliver said water through its irrigation canals, laterals, and ditches during each and every irrigation season thereafter, said amount of water being by it, its officers, servants, and agents, represented to be a sufficient supply of water for all crops and purposes, and which said representations plaintiff had a right to and did rely upon, and was to be delivered by it at the expense to petitioner of the pro rata cost of maintenance, not more than $1.50 per acre of land per annum as set out in said deeds and contracts, and the amount of actual cost of maintenance to be paid in three equal installments on the first days of March, June, and September of each year, and your petitioner, alleges that he has placed himself, in all and every way, in position to make beneficial use of said water and water rights, as in said contract and deed provided, and that he has so taken and used the water allotted to him and his said land each and every year since the execution of said contract and deed, and has paid said charges, in an amount and at the time specified in said contract, and he further alleges that he is now, and has at all times been, ready, willing, and anxious to continue to pay for said water service as in said contract provided for.

"Tenth. Your petitioner further represents and shows to the court that said lands so bought by him were put in a high state of cultivation, and orchards, vineyards, farms, and gardens established thereon, and said lands planted in fruit trees, vines, vegetables, and farm crops of alfalfa and grains, for which they had been by said Ft. Stockton Irrigated Lands Company recommended and represented to be especially adapted, and for the production of which crops in that soil it had been by said company represented that the amount of water as defined in said deeds and contracts was a sufficient supply for an irrigation season, and for some two or three years subsequent to the execution of said contract and deeds said Ft. Stockton Irrigated Lands Company, in compliance with the true spirit of the covenants and agreement in its contract and deed, and which were by it agreed to be kept and performed, did supply to this plaintiff on said lands sufficient water whereby your petitioner was enabled to produce crops and reap the benefits of his contracts of purchase of lands and water rights.

"Eleventh. That thereafter, and prior to the commencement of these proceedings, said Ft. Stockton Irrigated Lands Company sold or otherwise disposed of the remainder of its lands and irrigation plant and works, including irrigation diversion dams, canals, ditches, and laterals, and all of its rights, easements, privileges, and benefits under its contracts, to James W. Oldham and William B. Burget, as will more fully appear from the copies of a mortgage and deed of trust and trustee's deed hereto attached, marked 'Exhibits Nos. ――――,' and made a part hereof, and who on their part, and as in part consideration for the properties, rights, easements, and privileges and as acquired by them, undertook, agreed, contracted, and became liable and bound in law to said company and its vendees, including this petitioner, to carry out the terms and conditions of said company's contract and deed, and became promised, bound, and obligated in law to furnish and deliver, in accordance with the terms of the contracts, deeds and practice of the said Ft. Stockton Irrigated Lands Company, water to this petitioner, on the lands so purchased by him, sufficient to produce and mature crops, and did, in fact, in the crop season and year 1915, undertake to furnish to the occupant and users of said land, water as in said contract provided, and as said company had previously done, under its said written contract and oral undertaking and agreements to furnish sufficient water to produce and mature crops, save and except that for additional water furnished in excess of one acre foot, as measured by said Oldham and Burget, the said Oldham and Burget did undertake to levy an additional assessment of $1.50 per acre foot of water furnished, and which additional charge for water this petitioner says was not warranted by the terms of said contract, nor any subsequent or supplemental ·contract or agreement between him, as a holder of said farm units, and said Ft. Stockton Irrigated Lands Company, nor its successors in interest, said Oldham and Burget; but that the same was and is contrary to the written contracts and verbal agreements of said Irrigated Lands Company, and its officers, servants, and agents, James W. Oldham and William B. Burget, and others, and the successors in title and interest of said company, to furnish water sufficient to produce and mature crops.

"Twelfth. That thereafter, and prior to the commencement of this proceeding, said James W. Oldham and William B. Burget sold the remainder of their lands and their irrigation plant and works, including irrigation dams, canals, ditches, and laterals, and all of their rights, easements, privileges, and benefits under their contracts to the defendants in this cause who, on their part and as in part consideration for the properties, rights, easements, and privileges so acquired by them, undertook, agreed, contracted, and became liable and bound in law to said company and its vendees, the owners of farm units, and among them this plaintiff, to carry out the terms and conditions of said company's contract and deed, as will more fully appear from the copy of the deed of conveyance executed by said Oldham and Burget to said defendants, hereto attached, marked 'Exhibit No. ――――,' and made a part hereof, and did in fact in the crop seasons and years 1917 and 1918 undertake to furnish to the occupants and users of said land water as in said contract provided,

and as said company had previously done under oral understandings and agreements to furnish sufficient water to produce and mature crops, save and except that for water furnished, alleged to be in excess of one acre foot, the said defendants did levy an additional assessment of seventy-five cents per acre foot of water furnished, and which additional charge for water this petitioner says is not warranted by the terms of said contract, nor any subsequent or supplemental agreement or contract between him, as holder of said farm units, and said defendants, nor their successors in interest, said irrigated lands company, and Oldham and Burget, but that the same is contrary to and in violation of the written agreements and the custom and practice of the parties in interest, and the arbitrary assessment of seventy-five cents per acre foot of water by said owners of said works is violative of the laws of the state of Texas, and the duty and obligation of said company and its successors in interest, under the laws of the state of Texas, to furnish water at a reason· able compensation for such service.

"Thirteenth. Your petitioner further represents and shows to the court that said contract and deed for water purports to be and is a perpetual water right issued in accordance with the laws of the state of Texas; that the plaintiff paid to the said grantor therein approximately eighty dollars per acre for said water right, which was its full agreed value; that the plaintiff relied upon his rights thereunder as fixed and provided by the laws of the state of Texas, and relied upon the terms and provisions and representations made in the wording·of said instrument, as follows: 'That in consideration of the sum of $800 paid by said party of the second part (D. V. Rowles) to the said party of the first part for this water right deed and for a deed to real estate coincidently executed, receipt whereof is hereby acknowledged. and in further consideration of the stipulations and agreements herein entered into and on the part of the party of the second part as hereinafter set forth, the said party of the first part does hereby sell and convey unto the said party of the second part ten acre feet per annum of its water, said water being a perpetual right to have delivered through the canals, flumes, and laterals of the party of the first part from the waters of Comanche creek or other sources in Pecos county, Texas, or so much water as may be necessary to irrigate ten acres of land, not exceeding, however, at the point of delivery during any one year, an amount of water sufficient to cover said tract of land one foot in depth, or so much of said one foot as may be required to properly irrigate said land. The said party of the second part agrees that he will take and use said water from said first party during each irrigation season, and that he, his heirs and assigns, will pay therefor to the first party, its successors or assigns, for the maintenance, operation, and repair of the said canal, flumes, main laterals, reservoirs, and other works constructed and operated in connection with the system of delivering water from Comanche creek and other sources of water supply, whatever they are or may be, owned or controlled by first party, its successors or assigns, for the delivery of water to the foregoing and other lands in Pecos county, Texas, annual pro rata assessments to be fixed by first party not to exceed

one dollar and fifty cents per acre per annum, payable in three equal installments, the first of which shall become due and payable on March first of each year, and the others respectively on the first days of June and September in each year.'

"The said Ft. Stockton Irrigated Lands Company, its officers and agents, wrote the said deed and water right upon regular printed forms used and prescribed by them, and represented to the plaintiff that the amount of water to be furnished, and contracted to be furnished, in said water right was a sufficient amount of water to properly irrigate said lands throughout the year, and that the first payment was the purchase price of said water right, and that the annual payments to be made thereafter were simply to cover the actual operating expenses, guaranteed not to exceed one dollar and fifty cents per acre per annum, relying upon the representations so made and the laws of the state of Texas, and the terms and wording of said water right, that the amount of water to be so furnished was an amount 'so much water as may be necessary to irrigate' said land, and that the total amount charged was not to exceed $1.-50, and said plaintiff bought and paid for same. At the time he so bought and paid for said land the said grantor therein had sold other similar contracts and water rights to other parties, and was furnishing such other parties at said time not one acre foot, but water sufficient to irrigate the lands, and did continue for several years thereafter to so furnish such water in such quantities, and did not make, or attempt to make, any extra charge whatever therefor. That the plaintiff knew nothing of the conditions pertaining to irrigation of the land in question, or what amount of water was required to grow crops on said land, but relied upon the representations made by said parties. That the plaintiff bought his said lands and water rights, and the said grantor did in fact for several years thereafter furnish him water sufficient to grow crops thereon, and did not in any manner or form charge, or attempt to charge, him in excess of $1.50 per acre per annum for the delivery of said water. That thereafter, and after selling nearly all of its said lands and water, the said owners of said canals undertook to change the meaning and interpretation of said water right, and claimed that they had not sold to the landowners water sufficient to irrigate said lands, but had only sold an acre foot of water to each acre of land; said acre foot of water to be measured, not in terms of an amount of water sufficient to cover said land one foot deep, but an acre foot of water measured by flow at the point of delivery at the canal; which amount of water was only sufficient to supply such land with one, or, at most, two, irrigations, and totally insufficient to grow crops on said land. They then notified said landowners that when they had used said amount of water on their said lands they would be required to pay to the canal owners an additional $1.50 per acre for each additional acre foot of water up to the amount required to irrigate their said lands; that if the same was not paid in advance their water would be cut off. This practice was commenced in 1915, and since that time there has been a continual fight and controversy between said canal owners and said landowners as to the meaning of said water right and the charges

that could be made for the delivery of water to said lands.

"Fourteenth. That the terms and provisions of said water right are the same in two different instruments issued by said parties; that is, when a party purchased a tract of land on deferred payments a contract for same was issued, and an agreement to issue said water right in the terms above set out was included in said contract. When the said land was paid for by said deferred payments having been met, then a deed was executed, and said water right was executed and delivered. Such contract was made with plaintiff in 1911. The said canal owners, after the plaintiff had made such contract written upon printed forms prescribed by them, was compelled to accept such deed and water right in the form prepared by the said parties, and did not have any option as to the wording of same, or the provisions in same, but was forced to accept same in the form issued by them. They took up said original contract, and have same in their possession. The said forms were so prepared that said representations as to the supplying of sufficient water to irrigate said lands and the limitation of the charges to be collected annually were seemingly provided therein. The plaintiff herein relied upon said representations made to induce him to buy and pay for same, and relied upon the terms of said instruments providing for the delivery of sufficient water to irrigate said land, and upon the clause therein limiting the amount of the annual charge therefor. The plaintiff did not know how to measure water and did not measure same, and had no occasion to measure same because the said owners of said canals furnished him the water required to irrigate his lands without extra charge for several years and until some time in 1915. He had then paid such an amount on his said contracts that he could not afford to abandon same. Since 1915 the said canal owners have tried in every way to intimidate the plaintiff and force him to sign contracts to pay extra amounts for water, and have continuously threatened to cut off his water supply, and have cut off same, to his great distress and damage. By their said acts they have greatly reduced the value of his land and his water rights, to his great damage in the sum of ten thousand dollars.

"Fifteenth. On or about the —— day of May, 1918, the said canal owners sent to the plaintiff through the mail a card to be signed and returned, which was a form agreeing to pay for all water furnished on said land after June 17, 1918, at the rate of seventy-five cents per acre foot of water for the balance of the year 1918, and agreeing that they had the water to deliver, and would deliver same if said card was signed and returned, and that if said card with said agreements was not so signed and returned by said date that no further water could be furnished to the plaintiff during said year. The plaintiff, relying upon his said water right so bought and paid for, did not sign said card, and thereafter received a written notice from said canal owners that he would not receive any more water during this year, and they have failed and refused to deliver such water to him on said tracts 53 and 54, above described. The plaintiff's lands are planted in crops that are now suffering for water thereon; the said water

in said canals is delivered in rotation to the several water users, and the time for plaintiff to use same has just passed, and the said canal owners refused to deliver same to him, and his crops are dying and being greatly injured, to his great distress, in the sum of five thousand dollars, and unless said water is delivered to him within a few days he will suffer further and irreparable damage because of the want of said water. There is no other water supply from which plaintiff can secure water.

"Sixteenth. The plaintiff purchased from the said canal owners a water supply for the irrigation of his lands, and agreed to pay an annual carrying charge therefor, as above alleged. The said canal owners now have his said water running in their said canals, and refuse to allow the plaintiff to take same out of said canals and use same, and, as a result thereof, his crops on said lands are dying for the want of water. The said canal owners have demanded of him that he sign certain contracts changing his rights, and without giving him the right to say anything as to the form or terms thereof, but that he shall sign whatever they demand or let his crops die. The said canal owners have continually harrassed and worried said plaintiff, and their said acts have been malicious and continued, for the purpose of injuring him and depressing the value of his said land and water rights, and done with the malicious purpose of injuring and harrassing him, for which he sues for fifteen thousand dollars as exemplary damages.

"Seventeenth. That the said water right contract or deed provides that plaintiff shall only be charged his pro rata part of the necessary expenses of operating said canal system, not to exceed one dollar and fifty cents per acre per annum. Said contract does not provide anywhere or in any way that he will pay that amount for each foot of water used, but only not to exceed that amount per acre per annum. The said canal owners have arbitrarily undertaken to interpret said contract to mean that he shall pay that amount per acre foot of water delivered, and have never followed the method of making charges therein provided, and therefore cannot enforce any charges made against him. Under the terms of said contract they are required to prorate the actual expense of operating said canal, and notify him of the amount thereof, before he is required to make payment therefor. They have never done this, and have never prorated said expense, and have never given him notice thereof, but have, without right, demanded payment of them by flow at the point of delivery. The said interpretation of said terms of said contract is such as to deprive the plaintiff of the value of his said water right, for such an amount of water is totally insufficient to grow crops on said land, but only sufficient to start said crops in the spring, after which time the plaintiff is at the mercy of said canal owners as to the amount of water to be furnished and the charge to be made therefor, and the value of what he bought is entirely destroyed. Water, if delivered on and covering said land one foot deep during the year, would be sufficient for the irrigation thereof. But to measure one acre foot of water by flow at the point of delivery does not in fact cover all said

land as much as four inches deep. This distinction was unknown to the plaintiff at the time he bought said land and water right, and the said canal owners represented to him that sufficient water was to be delivered to cover said land one foot deep, same to be furnished at several different times for the several required irrigations thereof. The said canal owners, in addition to said representations, wrote in said water right the provision, 'So much water as may be required to irrigate said land, and an amount of water sufficient to cover said tract of land one foot in depth,' thereby causing the plaintiff to think that he was buying a sufficient amount of water to irrigate said land, and at least an amount sufficient to furnish several irrigations for said land, while, as said parties now attempt to interpret said contract, the amount to be furnished will hardly irrigate same two times, and same is totally insufficient to grow crops thereon. To cover said land one foot in depth all over requires much more than one acre foot, measured by flow at the point of delivery, because of the fact that to cover said land the water must be spread over the land, and in this process much of it is lost by seepage. To allow such an interpretation of such contract works a great fraud upon this plaintiff.

"Eighteenth. This plaintiff depends upon the crops grown upon his land to support himself and family, and to meet his taxes, water maintenance, and other expenses and charges. The said water to which he is entitled is flowing in said canals, and will go to waste unless he is permitted to use same. He is engaged in growing feed and other crops, of which the country at this time is in great need. The amount of damage that may be suffered is problematical in any farm products, but with water for use for the irrigation of said lands the plaintiff will grow much valuable crops. For all such damages the plaintiff has no adequate remedy at law. If he sits by and depends upon a suit at law to recover the damage he will suffer, he will be required to abandon his home, and seek work to make expenses and support his family while the water that belongs to him goes to waste. He will be unable to comply with the urgent need of the country that each farmer raise all possible feed and food crops, and for all of which he has no adequate remedy at law, but is compelled to appeal to a court of equity for relief.

"Nineteenth. Your petitioner further represents and shows to the court that in accordance with the custom and practice of the parties, and in compliance with the true meaning of the contract and deed for perpetual water rights, as hereinbefore alleged, and in compliance with oral agreements with owners of farm units, said Irrigated Lands Company and Oldham and Burget and defendants did furnish water to farmers on said lands sufficient to produce and mature crops thereon, as it had been represented could be done, but that in so doing said defendants assert that more than one acre foot of water was furnished, for which additional water said defendants have assessed against said water users on said lands a sum and sums of money in addition to the $1.50 by water users contracted to be paid, and have arbitrarily and without authority of law, and in violation of the express terms and conditions of the contract

and deed for a perpetual water right aforesaid, sufficient to produce and mature crops, made the payment of such assessment for alleged additional water a condition precedent to furnishing any water, in any quantity, for any purpose, during the balance of the irrigation and crop season of 1918.

"Twentieth. Your petitioner further represents and shows to the court that he has paid the amount due for water for the season of 1918, as same matured and the money thus tendered was by defendants in all instances accepted, but your petitioner was told by said defendants and their servants and agents that his water rights for the season of 1918 had been exhausted, and that all further water necessary to produce and mature his crops would be cut off until said assessment of seventy-five cents per acre foot for additional water to be furnished and used during the season of 1918 had been paid, or until a binding contract to pay same had been executed and delivered by the plaintiff to the defendants.

"Twenty-First. Plaintiff further represents and shows to the court that the section of the state wherein said lands are situated is arid, and subjected to long and protracted drouths, and he represents and shows to the court that if defendants continue, or are permitted to continue, to withhold from your petitioner the water in said contract provided to be delivered to him, in an amount sufficient to produce and mature crops, that the fruit trees, vines, alfalfa, and other vegetation planted by him on the lands aforesaid will die and become a total loss to petitioner, and will work upon your petitioner a great and irreparable loss, injury, and damage.

"Twenty-Second. Your petitioner further represents to the court, and alleges the fact to be, that the one acre foot of water in said written contract provided to be delivered, as measured by defendants, upon being put into practice, was found to be insufficient to produce and mature crops on said lands, and that thereupon it became the 'duty of defendants, under the written contracts and oral understandings and agreements with the petitioner, as the owner of farm units, to furnish additional water to produce and mature crops; and petitioner avers that such additional water is necessary to preserve the growth and life of the trees, vines, vegetables, and farm products so planted by your petitioner, and that, unless such additional water is so furnished, said trees, vines, and crops will perish and become a total and irreparable loss, injury, and damage to your petitioner.

"Twenty-Third. Plaintiff represents and shows to the court that there is an ample and abundant supply of water furnished by the Comanche springs and creek, and the irrigation canals of defendants are in good repair, as are also all individual ditches of this plaintiff; that said system of irrigation works, dams, canals, laterals, and ditches is a gravity system, the expense of operating the same small, and that no reason exists why or because of which defendants are or can be hindered or prevented from delivering water as in their contract and oral agreements provided, and at the price of not to exceed $1.50 per acre per irrigation season, as in said contract provided; and he says that the only reason defendants fail and refuse to deliver water, as in their contract and deed and oral agreements provided for, is because of the nonpayment of illegal and extortionate assessments alleged to be due to defendants.

"Wherefore, premises considered, your petitioner prays the court to issue its restraining order, directed to the said defendants, Wm. A. Hadden, trustee, John Rooney, Dan Bihl, James Rooney, and F. S. Wilson, and their servants and agents, directing and commanding them that upon the payment or tender of the payment of the annual water charge in installments as in said contract provided, not to exceed $1.50 per acre per annum, that they and each of them desist and refrain from refusing to deliver to petitioner upon said lands water as in said contract and oral agreements and understandings provided, sufficient for the irrigation of said land in regular rotation throughout the year, and that they desist and refrain from interfering in any manner whatever with the use by plaintiff of water, and that they be restrained from requiring plaintiff to make additional payments or asking additional cards or agreements in order to secure such water; that they be restrained from enforcing the collection of any amount for such water service except by the manner provided in said water rights—that is, the pro rata part of the actual cost of maintenance, not to exceed $1.50 per acre per annum; for general and equitable relief.

"Your petitioner further prays that defendants be cited in terms of law to answer herein, and that upon final trial the temporary orders here now prayed for be made permanent, for judgment for his damages as herein alleged, and for such other general and special relief as he may show himself entitled to."

Attached to the petition, and made a part thereof, are the various exhibits referred to.

Appellant presents four assignments of error, with several propositions thereunder, all, however, stressing different portions of the petition or some one of the exhibits. It is the one contention of appellant, and to which the others are but corollary, that the petition and its exhibits sufficiently show that the permanent water right contract declared upon provides for the furnishing of water sufficient to irrigate for farming purposes the several units or tracts of land described, and being parts and parcels of said irrigation system, and for which water right contracts had been purchased by appellant of appellee's grantors, and made appurtenant to said tracts of land, and at an annual charge, prorated with other units or tracts of land in said system, and at a price not to exceed $1.50 per acre per annum. It is claimed that the water right contracts were purchased by appellant for the purpose stated, upon representations made by the then owner of the entire irrigation system, including both the land and water, the Ft. Stockton Irrigated Lands Company; that the water right contract was a contract to furnish, for the consideration stated, the amount of water needed for the irrigation of said land; that appellees are the successors of said corporation by purchase, and by agreement and contract

assumed and became bound in law, both to the said corporation and its vendees of its farm units and water right contracts, to carry out and perform the terms of said corporation's water contracts and deeds as appear in the several exhibits; and that said corporation did in fact, in previous crop seasons and for said consideration of $1.50 per acre, undertake to furnish to the water users under said water contracts sufficient water to produce crops; that at the time of the purchase of said system by appellees the said previous owners were so operating said system and furnishing water in accordance with said understanding, representations, and interpretation of said water contract, and of which appellees had notice.

The several water right contracts issued by the Ft. Stockton Irrigated Lands Company to appellant, and upon which this suit is brought, except as ·to the quantity of land, contain the following statement: After reciting the consideration paid by appellant to the Ft. Stockton Irrigated Lands Company for the water right deed and for the deed to the real estate coincidentally executed, the writing recites:

"The said party of the first part (the Ft. Stockton Irrigated Lands Company) does hereby sell and convey unto the said party of the second part (appellant) fifteen acre feet per annum of its water, said water being a perpetual right, to have carried and delivered through the canals, flumes, and laterals of the party of the first part from the waters of Comanche creek, or other sources in Pecos county, Texas, or so much water as may be necessary to irrigate 15 acres of land, not exceeding, however, at the point of delivery,· during any one year, an amount of water sufficient to cover said tract of land one foot in depth, or so much of one foot as may be required to properly irrigate said land, said water to be beneficially used under the direction and authority of the water superintendent of the said party of the first part; the delivery and measurement of said water to be made from said canal and its laterals by and in such manner as said party of the first part may prescribe, from time to time, for measuring said water, the said water to be used for irrigation purposes and domestic uses only, and only upon the land situate," etc.,

—describing the land on which the water may be used. After reciting certain terms and conditions set forth, not brought in question, the writing proceeds:

"(4) The said party of the second part agrees that he will take and use said water from the said first party during each irrigation season, and that he, his heirs or assigns, will pay therefor to said first party, its successors or assigns, for the maintenance, operation, and repair of said canal, flumes, main laterals, reservoirs, and other works, constructed and operated in connection with the system of delivering water, * * * annual pro rata assessments to be fixed by first party, not to exceed one dollar and fifty cents ($1.50) per acre per annum, payable in three equal installments," etc.

210 S.W.—17

The contract suggests no further or other consideration than above to be paid for the water service.

Another exhibit set out at length recites a deed of trust executed by the Ft. Stockton Irrigated Lands Company to Charles Charpiot, trustee, in trust to secure a recited indebtedness on large bodies of land described, including all ditches, dams, flumes, laterals, and appurtenances belonging to the Ft. Stockton Irrigated Lands Company, then or thereafter constructed, upon any of the described lands, together with all water rights, privileges, and easements of every kind, etc., together with all tolls, incomes, etc., growing out of said land or water, or the said irrigation system or plant.

Another exhibit set out at length is a trustee's deed, made under the authority of the foregoing deed of trust, reciting default in the terms of the deed of trust, and sale of said properties to James W. Oldham and Wm. B. Burget. The properties embraced in the deed of trust and trustee's deed fully described and include the irrigation system here involved, and all rights attached or incident to same.

Another exhibit is a warranty deed from said Oldham and Burget conveying all of said properties, embracing and including the said irrigation system, to W. A. Hadden, trustee. Section 3 of said exhibit, under "Exceptions and Reservations," reads:

"This conveyance is made expressly subject to all outstanding deeds of water rights and contracts for water rights appurtenant to lands in either blocks 1 or 2, Ft. Stockton Irrigated Lands Company, or block A, and whether said water right deed or contracts for water rights were executed by the Ft. Stockton Irrigated Lands Company or by the grantors herein, and the said grantee hereto expressly assumes and agrees to carry out and perform all and singular the terms and conditions of said several water deeds or contracts to be kept and performed by either the said Ft. Stockton Irrigated Lands Company or the said grantors therein."

[1] It is insisted by appellees that it is manifest from the petition that they are in no way connected with the alleged fraud and deceitful practices and artifices disclosed by the petition, but had met and complied with every requirement made of them under the terms of the water contracts and deeds which measure their obligations to appellant; that the language of the water right contract is clear and unambiguous, and that it is manifest from the averments of the petition that appellees had not breached their agreements, covenants, and obligations with reference thereto, but had complied therewith. As stated, the real issue in the case evidently hinges upon the proper construction to be given the water right contracts themselves, in connection with the deed simultaneously executed, to the lands upon which the water was to be applied, in a proper cultivation of

them for farming purposes. If the meaning of the water contract is indefinite or ambiguous, and only in that event, and it further appears from the petition that the parties to the contract, by the acts and conduct of both parties, done with knowledge and in view of the purpose, consistent with that to which said acts and conduct are sought to be applied, such acts and conduct are entitled to be considered and have weight in construing the contract. Under such circumstances (that is, indefiniteness or ambiguity in the terms of the contract), the practical interpretation of the contract by the parties to it by their acts and conduct acting under the contract, and of which appellees had knowledge, as alleged, seems to give a practical construction of its terms, and is of controlling influence in ascertaining their understanding of its terms.

[2] The lands are situated in the arid portion of the state, and the parties to the land deeds and water contracts evidently contemplated that use of water on the land was necessary to its cultivation, and contracted with reference thereto. It is clear to us, also, that they contracted with reference to such quantity of water applied on the lands as would be necessary to a proper cultivation of the lands for crop-producing purposes. To accomplish the purposes stated, what did the party, owning both land and water, sell? The allegation in the thirteenth paragraph of the petition is that the Ft. Stockton Irrigated Lands Company "represented to plaintiff that the amount of water to be furnished, and contracted to be furnished, in said water right contract was a sufficient amount of water to properly irrigate said lands, * * *" guaranteed not to exceed $1.50 per acre per annum. The contract pleaded recites:

"Fifteen acre feet per annum of its water, * * * or so much water as may be necessary to irrigate fifteen acres of land, not exceeding, however, at the point of delivery, during any one year, an amount of water sufficient to cover said tract of land one foot in depth, or so much of said one foot as may be required to properly irrigate said land."

Does the expression "fifteen acre feet per annum of its water," as used in the water contract, mean to state a definite, technical, volume or quantity of water to the acre, and that volume or quantity to be the maximum volume or quantity of water sold and delivered per annum? The "acre foot" is a well-known and well-defined expression used for stating volume or quantity of water for uses of irrigation. Mr. Wiel, on Water Rights in the Western States, says: "The acre foot is the usual storage unit." Under some systems of irrigation, different water measurements are used, and hence different expressions for volume or quantity. Some use measurements of flow rather than volume. The unit of volume is either one

cubic foot, as in Colorado, or one acre foot, as used in many of the Western states, where irrigation is beneficial for farming purposes. But, when used, the acre foot expresses a technical, definite, and specific volume or quantity of water, the amount easily ascertained, and stated to be 325,850 gallons. Kinney on Irrigation, vol. 2, p. 1582, says:

"This [the acre foot] is a definite quantity of water, equal to one foot in depth, * * * or the amount of water which will cover one acre one foot in depth."

Is "fifteen acre feet" the maximum volume of water sold in the water contract? It would not be, as claimed, if we take the further expression, "or so much water as may be necessary to irrigate fifteen acres of land not exceeding, however, * * * an amount of water sufficient to cover said tract one foot in depth," as expressing a larger quantity of water than "fifteen acre feet." But as seen from the authorities cited, the use made of the word acre foot is the same in quantity as "one foot in depth." The "acre foot" and "one foot in depth" expressing the same quantity of water, the contract clearly states the amount of water sold, the maximum being fifteen acre feet, if that quantity is needed; if not, so much of it as may be necessary to irrigate fifteen acres. We think the contract is not indefinite or ambiguous, as claimed by appellant.

[3] It is alleged in the sixth paragraph of the petition (to which we refer for a full statement) and subsequent paragraphs, substantially, that the Ft. Stockton Irrigated Lands Company, as an inducement to appellant to purchase, represented to him orally, and in written and printed matter, that the water right (which we understand to mean the water right contract exhibited) guaranteed sufficient water to irrigate said land, and that the quantity stated was sufficient for any and all crops adapted to said land, and that appellant, relying thereon, bought the land; that the amount of water stated in said contract is not sufficient, etc.; that appellees are now demanding of appellant more money for the delivery of such quantity of water as is necessary to properly irrigate said lands, and, if not paid, water additional to the fifteen acre feet will not be delivered. The remedy asked is a restraining order directing that, upon the payment of the price agreed upon for the fifteen acre feet of water, appellees be required to desist from refusing to deliver sufficient water for irrigation of said lands, and refrain from requiring additional payments, etc.

Now, the parties to the contracts for land and water, it is shown, were dealing with each other "at arm's length." The suit is not brought to set aside the contracts for deceit or fraud, or misrepresentations of material facts, nor does the petition allege nor is it claimed that a mutual mistake was made

in entering into said contract, as to the quantity of water necessary to properly irrigate said lands, but rather to construe said water right contract, as made in connection with alleged written and verbal representations, and having reference to said contract, as providing for sufficient quantity of water to irrigate said lands for growing crops. The petition discloses no specific verbal representations other than that the water contract by its terms provides for a sufficient quantity of water to irrigate the lands, and the only printed or written representations disclosed are those in deeds and water right contracts themselves. True, it is alleged that the Ft. Stockton Irrigated Lands Company for some years actually delivered more water than is called for in the contract, and that appellees had knowledge of such fact. The petition, however, does not show that a controversy between appellant and the Ft. Stockton Irrigated Lands Company arose as to the construction to be placed on said contract as to the quantity of water provided for in the contract, and that the controversy resulted in the delivery of more water than the company claimed the contract provides for, and as the construction' to be placed upon the contract, and that appellees had knowledge of such controversy and construction by the company, and assumed to carry out said contract as so construed. The fact that the company actually and voluntarily delivered more water than was called for in the contract, we think, would not bind appellees to deliver a like quantity.

[4] We have read the authorities to which we are referred by appellant. The cases are based upon a supposed conflict between different portions of a contract, or upon ambiguous contracts. In the case at bar we have concluded that no conflict appears in the deeds or water right contracts, or in the different terms of either, and that the water right contract is not ambiguous. All the instruments referred to in the pleading, as stating and representing the facts pleaded, are made exhibits and parts of the petition. The petition alleges that oral representations were made as to the quantity of water agreed to be furnished, but such representations have reference to the amount of water defined in the deeds and contracts. The deeds to the land and the water right contracts do not, in our opinion, bear out or sustain the allegation as to representations made, or as to the quantity of water sold. The deeds and the water right contracts having been made parts of the petition and the cause of action based thereon, and the question being not one of variance, but of construction, the court will give to the instrument pleaded the legal effect to which it is entitled, and the legal effect will control when the allegations of the petition and the recitals of the instrument as to legal effect are found in con-

flict. Beal's Adm'r v. Alexander, 6 Tex. 531; Pyron v. Grinder, 25 Tex. Supp. 160; Beham v. Ghio, 75 Tex. 89, 12 S. W. 996; Cockrell v. Houston Pack. Co., 133 S. W. 697.

[5] While a writ of error was granted in the last-cited case, and the case reversed, the holding of Judge McMeans on the point stated above we think was not changed. 105 Tex. 283, 147 S. W. 1145. We find no fact alleged and supported by the exhibit referred to that would or could vary, or in any way modify or change, the contract as agreed to by the parties themselves. The water contract and all allegations in the petition have reference to the water contract and simply call for a construction of the contract by the court. If appellant under his fourth assignment, as suggested in his argument thereunder, means to assert that, by reason of the law, it is appellees' duty to supply such additional quantity of water as is sufficient to properly irrigate his said lands, we think the petition is not sufficient to raise such issue, the petition being based upon the contract pleaded, and not upon any supposed statutory right, independent of contract, by reason of the alleged fact that appellees are a public service corporation or the assignees of such corporation, and therefore charged with such duties. Complaint is also made that a large amount of water delivered, by seepage and otherwise, is lost and is not delivered on the land. The contract specifically provides that the delivery and measurement of the water is to be made from the canals and laterals of appellees. It is not alleged or claimed that the fifteen acre feet of water are not delivered, or not delivered as contracted, but complaint is made that that quantity, when it reaches the lands from the place of delivery and measurement, is far short of the quantity agreed to be delivered, and far short of a sufficient quantity to grow crops.

We have concluded that the court was not in error in sustaining the general demurrer.

The case is affirmed.

### On Rehearing.

HARPER, C. J. The appellant, upon motion for rehearing, urges that we were in error in holding that the petition did not contain the required allegations to charge the defendants with the duty to furnish water under the law applicable to the regulation of quasi public corporations independent of contract.

True, he has charged the appellees with being a quasi public corporation, or, as assignees of one, are charged with the duties and obligations of one; but, as held in the opinion, they have based their whole cause of action upon the contract, and the court is asked, first, to construe it to mean that appellees have bound themselves thereby to

furnish a sufficient amount of water to irrigate the lands described for the entire crop year at the price named, to wit, $1.50 per acre; and, second, that if the writing as executed is not susceptible of that construction, then he alleges that, if by reason of certain representations made at the time of entering into the contract, he was led to believe that the amount of water therein provided for was sufficient, and by reason of the further fact that the corporation for a time did furnish water sufficient to irrigate for a whole crop year more than the amount specified in the contract; that these matters should be read into their contract, and defendants compelled by injunction to so furnish it at the price fixed in the contract.

He nowhere alleges that the sum of $1.50 is a reasonable charge for the amount of water specified in the contract, together with such additional amount as is required for full irrigation; nor does he ask the court after inquiry as to the amount necessary, and after determining the additional amount, to fix a reasonable charge therefor, but bottoms his cause of action squarely upon the contract, and clearly admits that the defendants have not refused to furnish the amount specified in the contract for the consideration named, and that defendants offer to furnish an additional amount, but for a definite additional charge. It therefore follows that the petition states no cause of action, and it further follows that, if plaintiff has any rights, independent of his contract of which he is being denied, it is incumbent upon him to allege and prove that the defendants are in law a quasi public corporation subject to regulation by the courts; that he is entitled to more water than is now being delivered to him, the amount, and what is a reasonable charge therefor; for his contract is the charter of his rights as between him and private parties or private corporations. American Rio Grande Land & Irrigation Co. v. Mercedes Plantation Co., 208 S. W. 904.

Motion overruled.