**NICHOLS v. LORENZ. (No. 6664.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 18, 1922. Rehearing Denied Feb. 22, 1922.)

1. Cancellation of instruments ⬤⟿37(6)—Plaintiff's pleading held to raise issue of fraud as against exceptions thereto.

In an action to cancel a note given in payment for an interest in cattle, on the ground that the contract was induced by seller's fraudulent representations as to his interest, plaintiff's allegations *held* such that it was error to sustain exceptions thereto.

2. Chattel mortgages ⬤⟿226—Buyer is not obliged to discharge lien because mentioned in terms of sale.

Terms of a sale of an interest in cattle, reciting that a lien exists thereon, have no more

binding force to compel the purchaser to discharge the lien than in a case where not mentioned at all, for the buyer is not obliged to discharge the lien in either case, although, when buyer is notified that there is an existing lien upon the property, he takes the mortgaged property cum onere.

**3. Pleading ⊂⊃228—General exceptions should not be sustained if cause of action is stated anywhere in the petition.**

Where a general exception alone is presented, if there appears anywhere in the petition cause of action stated, it should not be sustained; every reasonable intendment being indulged in favor of the petition.

**4. Cancellation of instruments ⊂⊃41—Petition alleging fraud held to present fact issues for the jury, and hence not subject to general exceptions.**

Whether the contracts of sale of an interest in cattle were uncertain and ambiguous in themselves, and whether the buyer seeking cancellation of purchase note was induced by the alleged fraudulent representations made to him, upon which he relied in making the purchase, *held* fact issues for the jury, and petition alleging such matters was not subject to general exceptions.

**5. Sales ⊂⊃41, 263—Caveat emptor not invariable rule; implied warranty of title where buyer is without notice of seller's want of title.**

The common-law rule of caveat emptor, as applied to sales of personal property, has not always been followed in Texas courts, and it is well settled that an implied warranty will arise where the buyer has no notice of seller's want of title.

**6. Sales ⊂⊃39—A seller inducing sale by fraudulent representations of absence of lien, or refusing to raise an existing lien, is liable for fraud.**

Where a sale of personal property is made upon the false representations to buyer that there is no lien thereon, or, where there was one existing on it, and the seller does not raise it, the seller is nevertheless liable on his fraud, the same as a warrantor or guarantor of title would be.

**7. Evidence ⊂⊃433(8), 434(11)—Rule that unexpressed warranty may not be added to written contract has its exception where omission by accident, mistake, or fraud.**

The rule that, where a contract is in writing, and purports to set forth all the terms, no oral testimony is admissible to add to such contract a warranty of property sold, has its exceptions in cases where such warranty was omitted by accident, mistake, or fraud.

**8. Sales ⊂⊃53(3)—Whether seller's representation as to indebtedness was inducing cause of sale held for jury.**

In buyer's action to cancel his note given in payment for an interest in cattle upon which there was a lien, the contract stipulating that the seller "is not a party either to said indebtedness or said lien," *held* that bill of sale showed no express or implied assumption of the indebtedness by buyer, and that the pleadings were broad enough to submit an issue as to personal agreement that the seller was to discharge it, and that, if such representation as to indebtedness was the inducing cause, then the allegations and the terms of the instrument themselves required the submission of such issue to the jury.

**9. Contracts ⊂⊃154—Should be reasonably construed.**

The primary rule for construing contracts is to ascertain, if possible, and give effect to the parties' real, true, mutual understanding and intention, and to give a reasonable, rather than a forced, construction where possible, that one most equitable to the parties, and not one giving an unreasonable advantage, a construction that evolves the more reasonable and probable contract, rather than one leading to unfair and absurd construction and result.

**10. Pleading ⊂⊃428(3)—Petition for canceling sale note, though subject to criticism, held sufficient in its allegations of fraud to admit proof.**

Petition in buyer's action to cancel purchase note *held* to set up sufficiently allegations of fraud in seller's procuring of the sale, through representations of his interest, and grounds for recovery therefor sufficient to let in the proof, although somewhat subject to criticism, and not carefully and tersely drawn.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by J. D. Nichols against Adolph Lorenz. Judgment for the defendant, and the plaintiff appeals. Reversed, and remanded for new trial.

Hertzberg, Kercheville & Thomson, of San Antonio, for appellant.

W. H. Blanton, of Gonzales, and L. H. Browne, C. J. Gray, and Don A. Bliss, all of San Antonio, for appellee.

COBBS, J. Appellant sued appellee for the cancellation of a note for $12,000, and for judgment in the sum of $5,115.10, with interest thereon, and, in the alternative, if the note be not canceled, then for judgment for $13,731. The suit grows out of a contract of sale, wherein appellee sold an undivided one-third interest to appellant in a certain stock of steers, known as Russell, Browne & Vasbinder steers, in Live Oak county, Tex. The bill of sale for said cattle recites a prior existing lien on the property conveyed to appellants to secure a certain indebtedness. The note was made nonnegotiable. A partnership was theretofore formed consisting of Browne, Russell, and Lorenz, for the purpose of disposing of the cattle at the price of $50 per head, and providing when the cattle were sold the partners were to participate in one-third of the profits each, and in computing profits before division should be in the following manner:

, ⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(a) Interest charges since August 2, 1917, until sold.

(b) Wages to one man for looking after cattle.

(c) Necessary expenses for caring for and handling the cattle.

Appellant charged: That the number of cattle was not known when he purchased a one-third interest, actually numbered at about 520 head, and at the time of the purchase of the approximate value of $80 per head. That at the time of executing the note for a one-third interest in the purchased cattle they were estimated by appellee at that time to be 450 head, valued at $80, and he fraudulently represented to appellant that he owned a full one-third interest in all of said 450 head of cattle. That, if Lorenz only owned a one-third interest in the profits of said cattle, appellant was not so informed, and did not know of it, and would not have paid said sum of $12,000 if Lorenz only owned a one-third interest in the profits—that is, in all, interest over and above $50 per head and expenses, instead of the cattle themselves. That by said contract and bill of sale subsequently executed, and the oral representations made to him, it was understood that said one-third interest in said cattle, known as the Vasbinder steers, would be freed from all liens, and that appellant was not to be a party to the indebtedness or lien on the cattle.

That appellee represented that said $12,000 was to be the full amount that appellant was to pay for the one-third interest in the cattle, which was equivalent to an express agreement on the part of appellee to free said cattle of the lien. Then he urged, in the alternative, if appellee did not agree to pay off the lien then existing against the cattle, yet he did do so by expressly agreeing and representing that $12,000 was to be the full consideration to be paid for said steers to entitle appellant to acquire the one-third undivided interest, freed from the lien, and thereby impliedly agreed he would pay off the note so that appellant's interest in the cattle would be freed from said liens. That Browne & Russell sold 469 head of said cattle for $52,190.93, and since have sold 51 head for the sum of $4,700, and refused to recognize appellant's full interest, but insist on carrying out their contract with Lorenz, and now appellee, Lorenz, claims that he did not sell a full, undivided one-third interest in the cattle, simply sold his equitable interest therein, and now all parties refuse to pay him one-third of the purchase price brought by the first 469 head, but offer a one-third interest in the profits over $50 per head on 712 head of cattle. After deducting $41,879.31 in the sale of said first 469 head, they paid to appellee and credit on said note the sum of $3,384.07, which appellee received as a correct settlement, and the firm has since paid the appellant one-third of said $4,700.37, brought by the sale of 51 head of the cattle, amounting to $1,566.79.

That if appellant had not expressly or impliedly agreed to pay off the lien, and if the agreement does not so show, then said agreement and bill of sale are ambiguous and uncertain, and do not express the true and real intention of the parties, which was that appellee agreed to pay off and discharge the lien against said cattle and deliver them free of all liens to appellant.

Appellant charges appellee was guilty of fraud in the sale by representing he owned a full one-third interest in said cattle and that he fraudulently represented he would pay off the lien, and because of which he was induced to make, execute, and deliver the note, for which reason the note was made nonnegotiable; that at the time of making said representation appellee had no intention of making good, but knew he would not pay off said lien, and has not done so. He made said representation for the purpose of inducing appellant to enter into the contract for the purchase of the cattle, but failed to write the express stipulation in the contract as to what should be done with the lien on the cattle, but the misrepresentations so made induced appellant to so act, and he did act by reason thereof in entering into said contract and agreement to pay $12,000 for said steers, which he would not otherwise have done, and would have only paid or have agreed to pay the market value of the appellee's interest herein. He also represented that the lien on the cattle sold him would not exceed $50 per head, all of which representations were false, and made for the purpose of deceiving him; that appellee did not own a third interest in the cattle, only one-third interest in the profits, after paying $50 per head and carrying charges on 712 head of cattle, and never himself received title to same from Vasbinder & Co., being only entitled to a part of the profits at the time the cattle were sold.

Appellant represents that the representation made to him by appellee of the ownership of the undivided one-third interest in the cattle sold and appellee's promise to pay off the lien were material representations, including the representation as to the amount owing on said lien, for appellant did not know the amount of the lien against the cattle or appellant's ownership of the cattle, and were part of the cause inducing appellant to enter into the contract.

The plea of failure of consideration under oath was also filed.

Appellant charges the appellee is liable to him for the amount of the lien against the cattle for the one-third of the amount so

charged, to wit, $13,731.03, which, after deducting amount owing by appellant on said note, left the sum of $5,115.10 owing to appellant, allowing interest on both amounts. So, in the event the note was not canceled, it left the sum of $13,731.03, and interest due to appellant, for which he sued.

Appellee's answer consisted, among other things, of both general and special exceptions, not necessary now to be set out, but which will appear in our opinion later.

The case was tried with a jury. The court sustained all the exceptions to appellant's pleadings, including appellant's defenses to the note, after which rulings the appellant refused to amend, and the cause was dismissed.

After the note and the various contracts were read in evidence appellee filed a motion for an instructed verdict on his cross-action; thereupon the court instructed the jury to find in favor of appellee against appellant for the sum of $10,125.53, principal, interest, and $1,012.55 as attorney's fees. Russell & Browne were also dismissed from the suit with their costs.

Appellant appealed and has duly assigned as error each of the several rulings of the court, both on the general and special exceptions and the instructed verdict.

[1] The first error assigned and question discussed by appellant under his proposition is to determine whether a cause of action is stated, challenged by appellee's demurrer, in connection with a consideration of the contract of January 25, 1919, and the bill of sale executed on May 1, 1919, wherein the contract states the sale to appellant of various properties, lands, cattle, etc., therein mentioned, as this deal for the cattle involved in this suit was also covered by a separate bill of sale and paid for separately by the note, all set forth in appellee's pleading. The contract itself stipulated, among other things, the sale by appellee of "an undivided one-third interest owned by said Lorenz in a certain stock of steers known as the Russell, Browne & Vasbinder steers, located on the old Simmons ranch in Live Oak county, for the sum of $12,000, to be paid by the said Nichols as hereinafter set forth." The note recited it "is executed in payment for the undivided one-third interest owned by Adolph Lorenz in a certain stock of steers known as the Russell, Browne & Vasbinder steers," and made nonnegotiable, which note is set forth as the consideration in the bill of sale conveying the one undivided one-third interest—

"in and to a certain stock of steers known as the Russell, Browne & Vasbinder steers, located, on the 25th day of January, 1919, on what is known as the old Simmons Ranch in Live Oak County, Texas, each of said steers being branded  S ⋔  on the left side, or  ⊃—  around the left hip bone.

"To have and to hold the foregoing described

property unto him, the said J. D. Nichols, his heirs and assigns, forever, it being understood, however, that there is a lien against said steers to secure certain indebtedness, but that said Adolph Lorenz is not a party either to said indebtedness or said lien."

Whether it was the intention that said cattle were to be sold free of the lien, we think, under the allegations of fraud set out in the pleading of appellant, especially in connection with the contract itself, it was error not to permit the issue to go to the jury.

[2] Under the terms of a sale that recites that a lien exists upon property, it has no more binding force to compel a purchaser to discharge the lien than in a case where it is not mentioned at all, for in neither case is the purchaser obligated to discharge the lien. When a purchaser is notified that there is an existing lien upon the same, and thus purchases mortgaged property, he takes it cum onere, for he knows he is merely purchasing an equity of redemption. But is that the case here? We think not, for the bill of sale itself expressly says:

"Said Adolph Lorenz is not a party either to said indebtedness or said lien."

[3, 4] What is meant by said language is not clear; it is ambiguous. If he is not to be "a party to said indebtedness or said lien," was it meant he was not to be in privity to it with Russell, Browne & Lorenz, and required to discharge it pro tanto? Were they to discharge it out of their firm assets, or was Lorenz himself, who was primarily liable to appellant to do so? There is no language therein of assumpsit on the part of appellant that shows he was agreeing to pay it. He alleges that appellee fraudulently represented to him that he owned a full one-third interest in said cattle, and promised to discharge the lien and for that reason appellants made the note nonnegotiable. That, when appellee made those fraudulent representations he had no intention of paying off the lien, and has not done so, but made them to induce appellant to enter in the contract.

Appellant also charged that appellee represented that the lien on the cattle did not exceed $50, which representation was also false and made to deceive; that appellee in fact did not own a one-third interest in the cattle, but owned, if anything, a one-third interests in the profits after paying $50 per head and carrying charges on 712 head of cattle; that he never had title to same from Vasbinder Company, but was only to receive a part of the profits at the time the cattle were sold. Upon all these representations appellant relied, which induced him to enter the contract which he otherwise would not have done; that is to say, as to his fraudulent representations of ownership of a one-third undivided interest; and that he would.

pay off the lien on the cattle, and his representations as to the amount of the lien.

In this case the general and all special exceptions were sustained. Where a general exception alone is presented, if there appears anywhere in the petition a cause of action stated, the general demurrer should not be sustained. Every reasonable intendment is indulged in favor of the petition. Kampmann v. Rothwell, 107 S. W. 120; Martin v. Brown, 62 Tex. 467; Townes on Pleading, p. 380.

[5, 6] As to whether the contracts were uncertain and ambiguous in themselves, and whether the appellant was induced by the alleged fraudulent representations made to him upon which he relied in making the purchase, are issues of fact for determination by the jury, and should have been submitted by proper instructions, and were not subject to demurrer. Barnes v. Early-Foster Co., 228 S. W. 248; Ferguson v. Johnson, 228 S. W. 338. It is true, at common law, the rule of caveat emptor applied to all sales of personal property. But that rule has not always been followed in our courts. Now it is well settled that an implied warranty will arise where the purchaser had no notice of the want of title on the part of the seller. 24 Ruling Case Law, p. 182, § 454; Gurley v. Dickason, 19 Tex. Civ. App. 203, 46 S. W. 53; Kempner v. Wallis, 2 Willson, Civ. Cas. Ct. App. §§ 599–611; Wood v. Ross, 26 S. W. 149; Nations v. Love, 26 S. W. 233; Logan v. Holland, 25 Tex. 398. While that is true, still, when a sale of personal property is made upon the false representation to the purchaser that there is no lien upon the property, or where there was one existing upon it and the seller does not raise it, the seller is nevertheless liable on his fraud, the same as a warrantor or guarantor of the title would be.

[7] It is true, as appellee contends, where a contract is in writing, and purports to set forth all the terms, no oral testimony is admissible to add to the terms of such contract a warranty not expressed. That general law has its exceptions in cases where such warranty was omitted by accident, mistake, or fraud.

[8] But here, does not the bill of sale itself show the elimination of appellant from any agreement of assumpsit, or that he was to take the property subject thereto. It is expressly stipulated he "is not a party either to said indebtedness or said lien." If it means, as appellee contends, to sustain his position, that appellant was to take it subject thereto, and his portion of the profits was to be applied thereto, the instrument is ambiguous, and needs explanation, for there is no such express or implied assumpsit from those terms. If it does not so mean, it is still ambiguous. If there was a personal agreement in respect thereto that appellee was to discharge it, the pleadings are broad enough to submit that issue. If it was the inducing cause of the purchase, then the allegations and the terms of the instrument themselves were such as to require the submission of the issue to the jury. There is nothing alleged or offered in evidence that would contradict the terms of the bill of sale that appellee was not a party "either to said indebtedness or said lien," but it would tend to explain the meaning of those terms. We cannot agree with appellee's contention that, because the stipulation in the contract was that appellant was to pay the full sum of $12,000 for one-third interest in the Russell, Browne & Vasbinder cattle, in any event it shows that appellant was to pay off the lien on the cattle. May it rather not show, as appellant contends, if he had been informed of the true facts at the time of the execution of that note for so large a sum as $12,000, that appellee only owned a one-third interest in the profits over and above $50 per head on 712 head, and all expenses incurred in caring for, handling, and marketing same, and was to pay off the lien on the part he purchased, he would not have purchased the property?

[9] The primary rule of construction of such contracts is to ascertain, if possible, and give effect to the real, true, mutual understanding and intention of the parties, and then to give a reasonable construction, where that is possible, rather than to give a forced and unreasonable one, so as to give a construction most equitable to the parties, and not give an unfair or unreasonable advantage over the other, and that construction should be employed that evolves the more reasonable and probable contract, and not one that leads to an unfair and absurd construction and result. 13 Corpus Juris, p. 540, § 11.

[10] As aptly said by Mr. Justice De Graff, of the Iowa Supreme Court, in McMillan v. Osterson, 183 N. W. 487:

"The law favors trials, and rights must not be denied by too strict an application of mere legal formality. The sword of justice is not often made more keen by the whetstone of technicality, and a right secured by too rigid means may harden into a wrong. * * * Not only must justice appear to be done, but it is the function and duty of this court and of all courts to see that it is done. Technicality should not become a Pegasus, which, if ridden by an expert legal jockey, may carry us far from the true goal. Undoubtedly it is desired by the court and it is also to the interest of litigants to have a lawsuit brought to an end, but, if done too suddenly, perchance justice may not be attained."

We think there is sufficient merit in appellant's case for it to go to the jury.

While we think the petition sufficiently sets up the allegations of fraud and the grounds for recovery to let in proof, it is somewhat subject to appellee's criticism, and

might have been more carefully and tersely drawn.

We have not undertaken to discuss or pass upon all the questions raised, for they may not arise on another trial.

We think the court erred in its rulings on the demurrers, and in instructing a verdict against appellant and in favor of appellee in this case. The judgment of the trial court is therefore in all things reversed, and the cause remanded for another trial.

Reversed and remanded.

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 29, 1922.